## EQUITABLE TRUST COMPANY, TRUSTEE, *v.* ROCHLING ET AL.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 34. Argued October 14, 17, 1927.—Decided November 21, 1927.

1. Where a bank before the filing of a petition in bankruptcy against it, received deposits of checks, the proceeds of which were later collected by its trustee in bankruptcy, the depositor is entitled to claim the proceeds of the deposit only if the bank received the checks as an agent for collection, but must stand as an ordinary creditor if ownership of the paper passed to the bank. P. 252.

2. Respondents, who were bankers of Frankfort-on-Main, desired in the course of their international business, to arrange a credit at New York. Pursuant to instructions issued at their request by London connections, New York banks delivered to a New York banking firm (afterwards bankrupt) their cashier's checks drawn payable to the order of that firm " for account of " respondents. On the same day, the firm, in following a course of dealing previously established with respondents, credited the checks to respondents' account, made book entries indicating that respondents were entitled to interest on the amount from that date, and deposited them to its own credit in other banks. Before collection of the checks, the petition in bankruptcy was filed. *Held*—That the

words "for account of" were not necessarily to be taken as constituting the payee an agent for collection, but were to be construed in the light of the intention of the parties as revealed by all the circumstances, and in this instance their purpose was to advise the bankrupt of the account to which the checks were to be credited, and not make it an agent for collection, or restrict its rights as purchaser. P. 253.

10 F. (2d) 935, reversed.

CERTIORARI, 271 U. S. 653, to a judgment of the Circuit Court of Appeals, which reversed an order of the District Court dismissing a petition of the respondents for reclamation of the proceeds of checks collected by the above named trustee in bankruptcy.

*Mr. Godfrey Goldmark,* with whom *Messrs. George G. Ernst* and *Ralph F. Colin* were on the brief, for petitioner.

*Mr. Henry G. Hotchkiss,* with whom *Mr. William H. White, Jr.,* was on the brief, for respondents.

Early English authorities decided that the words "for account of" were restrictive. *Truettel* v. *Barandon,* 8 Taunt. 100; *Coxe* v. *Harden,* 4 East 211; *Lloyd* v. *Sigourney,* 5 Bing. 525.

The modern English rule is the same in cases of "crossed cheques." The Laws of England, by Lord Halsbury, Vol. 1, p. 569; Vol. 2, p. 480; Morse on Banks and Banking, 6th Ed., § 245.

Early American federal and state cases follow the English rule. *Lee* v. *Chillicothe Bank,* 15 Fed. Cas. 151; *Leary* v. *Blanchard,* 48 Me. 269; *Blaine* v. *Bourne,* 11 R. I. 119.

The words "for account of" held to be restrictive. *White* v. *Miner's Nat'l Bank,* 102 U. S. 658. Followed in *Commercial Nat'l Bank* v. *Armstrong,* 148 U. S. 50; *Old Nat'l Bank of Evansville* v. *German American Nat'l Bank of Peoria,* 155 U. S. 556; *The Nyssa-Arcadia Drainage Dist.* v. *The First Nat'l Bank,* 3 F. (2d) 648.

The legal restrictive effect of the words "for account of" and "for collection" is identical. *Old Nat'l Bank of Evansville* v. *Bank, supra; The Nyssa-Arcadia Drainage Dist.* v. *Bank, supra; Bank of Metropolis* v. *First Nat'l Bank of Jersey City,* 19 Fed. 301.

The restrictive effect of the words "for collection" is recognized in practice by the New York Clearing House. Paton's Digest of Legal Opinions and Banking Law, § 2747.

The words "for account of" are restrictive within the definition of the Negotiable Instruments Law of New York.

The effect of the restrictive wording was to prevent Knauth, Nachod & Kuhne from obtaining title to the checks or their proceeds.

The words "Through the New York Clearing House" and "Payable Only Through the New York Clearing House" are also restrictive.

Nothing in the dealings of the parties nor in the circumstances surrounding the case in any way changes the legal effect of the wording appearing on the checks.

Lloyd's Bank and The Swiss Bank were liable to respondents for any delay in payments that might arise.

The reversal of the entries in the case of the Speyer check indicates the equivocal nature of the credit of the check and entries for interest.

The crediting of the checks does not affect the restrictive quality of the words appearing thereon. *Nat'l B. & D. Bank* v. *Hubbell,* 117 N. Y. 384; *In re Jarmulowsky,* 249 Fed. 319; *Beal* v. *City of Somerville,* 50 Fed. 647.

The entries relating to interest are equally insufficient to change the legal consequences of the wording on the face of the checks. *Fifth Nat'l Bank* v. *Armstrong,* 40 Fed. 46; Morse on Banks and Banking, 6th Ed. § 658 (c).

The facts in the present case bring it within the authority of *White* v. *The Bank, supra,* and not within the purview of *Burton* v. *U. S.,* 196 U. S. 283.

MR. JUSTICE STONE delivered the opinion of the Court.

Respondents, bankers of Frankfort-on-Main, maintained a general deposit account with the bankrupts, who were private bankers in New York City.   On instruction of Lloyds Bank, Ltd., London, which was requested by respondents " to procure this amount for us " on June 15, 1923, " at Knauth, Nachod & Kuhne, New York," the National Bank of Commerce in New York on that day delivered to Knauth, Nachod & Kuhne, the bankrupts, its cashier's check for $30,000 payable to their order " for account of Rochling Bank, Gebt. Frankfort-on-Main," and took from them their receipt for the check " for account of Rochling Bank."   On instruction of the Swiss Bank, London, the National City Bank, New York, on the same date delivered its cashier's check for $30,000, payable to the order of Knauth, Nachod & Kuhne, "A/C Gebr. Rochling, Frankfort A/M," taking from them a receipt in like form.   On that day, too, the bankrupts credited the account of respondents with the two checks and made an entry on their books indicating that respondents were entitled to interest on the amount of the checks from that date.   The checks were deposited by Knauth, Nachod & Kuhne in their own deposit accounts in other banks and were there credited to those accounts.   On the following day, June 16, 1923, before the collection of the checks, the petition in bankruptcy was filed.

In receiving these checks, forthwith crediting respondents with them, and in crediting interest from the date of their receipt, the bankrupts followed the established course of their business with respondent which had extended over a period of more than two years.   Periodic statements of the account rendered to respondents showed that interest was credited from the day of deposit, and that on occasion drafts were made against deposits before they had been collected.

Respondents' petition, filed in the district court for southern New York, for reclamation of the proceeds of the checks, was dismissed.   The order of the district court was reversed by the circuit court of appeals for the second circuit, 10 Fed. (2d) 935.   This Court granted certiorari. 271 U. S. 653.

The proceeds of the two checks concededly have come into the hands of the petitioner, the bankrupts' trustee, and the sole question presented is whether the bankrupts, on receipt of the checks and before the filing of the petition in bankruptcy, became the owners of them, or whether, as the court of appeals held, Knauth, Nachod & Kuhne were respondents' agents to collect them.   If the former, respondents were creditors of the bankrupts, *Douglas* v. *Federal Reserve Bank,* 271 U. S. 489; *Burton* v. *United States,* 196 U. S. 283, entitled to share only on an equal footing with other creditors.   If the latter, respondents were entitled to reclamation from the petitioner since the checks had not been collected at the time of the petition in bankruptcy.   *St. Louis & San Francisco Ry.* v. *Johnston,* 133 U. S. 566; *White* v. *Stump,* 266 U. S. 310, 313; Bankruptcy Act, § 70 (a), c. 541, 30 Stat. 544, 565, as amended, § 16, c. 487, 32 Stat. 797, 800.

Ordinarily, where paper is indorsed without restriction by a depositor and is at once placed to his credit by the bank, the inference is that the bank has become the purchaser of the paper and in making the collection is not acting as the agent of the depositor.   *Douglas* v. *Federal Reserve Bank, supra; Burton* v. *United States, supra; In re Jarmulowsky,* 249 Fed. 319, 321.   But the court below thought, and respondents argue here, that the form of the check directing payment to be made to the bankrupts "for account of" the respondents operated to make them agents to collect the paper.   The point is made that this is the effect of these or equivalent words where the payee of negotiable paper indorses it " for

account of " the indorser.   It may be conceded that such an indorsement indicates that the transaction is not a purchase and sale of the paper and, at least when not otherwise explained or limited, may fairly be taken to mean that the interest gained by the indorsee is that of an agent for collection.   *White* v. *National Bank,* 102 U. S. 658; *Evansville Bank* v. *German-American Bank,* 155 U. S. 556; *Commercial Bank of Penn.* v. *Armstrong,* 148 U. S. 50, 57.

Here, however, the words were used not by a payee in his indorsement, but by a third person making a deposit for respondents' benefit.   They are thus of much less significance than in the usual case as data in determining the relation between respondents and the bankrupts; and the course of conduct of the parties becomes correspondingly more important.   Moreover, the words themselves, despite their wide commercial use and the importance of giving them, as far as practicable, a uniform effect, have no rigid and unchangeable significance.   Their purpose is to express intention.   They are not an incantation which unfailingly invokes an agency.   And the circumstances in this case indicate that they were here used with a different object.

The dominant purpose of the entire transaction, as far as respondents were concerned, was to arrange that a credit with the bankrupts should be available on June 15, and this they accomplished as soon as the checks were delivered to the bankrupts.   While we need not stress the point, the added facts that respondents were international bankers requiring the credit, in the course of their business, and that the credit was effected by the deposit of cashier's checks, which pass among bankers as current funds, are not without their significance.   Nothing in the previous course of dealing or in the actions of respondents indicates that they int nded or had any reason for intending that Knauth, Nachod & Kuhne should take the paper

as their agents for collection, or that any restriction should be placed on the use of the checks by Knauth, Nachod & Kuhne once they had credited respondents.

Nor was there anything in the relationship to the transaction of the New York banks whose checks established the credit to suggest any reason or purpose so to restrict it. The duty of these banks was performed and their interest in the paper, apart from their liability to pay it, ceased as soon as they had delivered it to the bankrupts. But it was indispensable to the completion of the transaction that the bankrupts should be advised to what account the checks were to be credited. And it was apparently the function of the words in question to tell them. That alone, we think, was their purpose. To assign them any other would be to ignore the course of business followed here and banking usage in general, and to give them a strained and unnatural construction. We think the district court was right, and the judgment of the court of appeals is

*Reversed.*