HIGHWAY TRAILER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44568. Promulgated August 1, 1933.

*R. M. Stroud, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

794

OPINION.

McMAHON : The only question to be determined is in what taxable year or years is the petitioner's loss deductible under the provisions of the applicable statutes which provide for the allowance of deductions in the computation of net income, of corporations for " losses sustained during the taxable year and not compensated for by insurance or otherwise." [1]

In reading this language of the statutes and in its application, the scope and purpose of the revenue acts must be borne in mind. As stated in *Lucas* v. *American Code Co.*, 280 U.S. 445, relied upon by petitioner: " Generally speaking, the income tax law is concerned only with realized losses, as with realized gains."

Such being the case, the statute applicable here refers to realized losses not compensated for by insurance or otherwise.

The respondent contends that a loss is deductible during the taxable period when the event occurs which gives rise to the loss. But the occurrence of the event merely initiates or gives rise to the loss. Something more is necessary. A loss cannot be said to be sustained by the mere happening of an event which eventually may or may not result in a loss. Upon the happening of such event there is merely a possibility of a loss. Since taxes can only be computed in dollars and cents, the extent or amount in dollars and cents of the loss, and whether such amount is compensated for in whole or in part must be determined with reasonable certainty before the loss is completely established so as to permit its deduction.

The Board in *Pike County Coal Corp.*, 4 B.T.A. 625, determined that a loss resulting from a fire occurring in 1918 was deductible in 1919 where the taxpayer, believing that the property would not be a total loss, proceeded in good faith to determine the loss which it had actually sustained by returning it for repair to those who were in a position to best judge the extent of the damage. The Board, in its opinion, stated :

The statute [sec. 234 (a) (4) Rev. Act, 1918] contemplates that a deduction shall be allowed when a loss has in fact and in truth been sustained, and the establishment of the loss is a question of fact in each case and may not always depend upon the happening of any particular event. In order to have been in a position to claim a deduction in 1918, the taxpayer would have been required to justify, with at least some degree of accuracy, the amount of the loss ; otherwise the deduction from gross income for 1918 would have represented *a mere guess*, in all probability, unjust either to the Government or to itself. [Italics supplied.]

---

[1] See sec. 234 (a) (4), Revenue Acts of 1921, 1924 and 1926 ; sec. 200, Revenue Acts of 1924 and 1926 ; Rept. 275, 67th Cong., 1st sess., Senate Committee on Finance, pp. 14–15, 19 ; Rept. 398, 68th Cong., 1st sess., Senate Committee on Finance, pp. 10–11 ; Regulations 62, 65 and 69, arts. 141 and 561 ; and *Douglas County Light & Water Co.* v. *Commissioner*, 43 Fed. (2d) 904.

In *Allied Furriers Corp.*, 24 B.T.A. 457, relied on by petitioner, the question presented for determination was whether the taxpayer was entitled to deduct from income in 1928 the amount of a loss resulting from a theft of goods in 1925, where the taxpayer was protected by burglary insurance and where the Supreme Court of the State of New York decided in 1928 that taxpayer was not entitled to recover the loss from the insurer. The Board stated in its opinion as follows:

This Board and the courts have held that where fire, embezzlement or other casualty occurs and is covered by insurance or otherwise, no deduction can be claimed for the year of the casualty, but that it is allowable for the year when the claim for compensation thereof is settled.

\*    \*    \*    \*    \*    \*    \*

The facts in the instant case show that in 1925 the petitioner was protected by an insurance policy against any loss from burglary. It could not reasonably have claimed any loss in its 1925 return from burglary. From its standpoint it was covered by insurance. When the insurer refused to pay the loss, the petitioner in good faith brought suit against it for the recovery of the loss. *The loss was sustained when the court held that the insurance company was not liable for the amount thereof. In a very practical sense the loss was sustained in 1928.* [Italics supplied.]

See *Allied Furriers Corp.*, *supra*, for other supporting authority and discussion.

Furthermore, the United States Supreme Court in *Lucas* v. *American Code Co.*, *supra*, stated that:

\*  \*  \* The general requirement that losses be deducted in the year in which they are sustained calls for a *practical, not a legal, test.* [Italics supplied.]

The above principle was reiterated by the United States Supreme Court in *Burnet* v. *Huff*, 288 U.S. 156, as follows:

\*    \*    \*    \*    \*    \*    \*

We find it unnecessary to discuss the question whether Huff was bound to make good the amount taken from the funds of the association by his copartner. We may assume that he was. But the mere existence of liability is not enough to establish a deductible loss. \*  \*  \* And whether a taxpayer *will actually sustain a loss through embezzlement of trust funds* of which he is trustee will depend upon a variety of circumstances. If there is liability on his part for the misappropriation, it does not create a certainty of loss, as the defalcation may be made good by the one who caused it, or the liability of the taxpayer may be enforced only to a limited extent or not at all. The requirement that losses be deducted in the year in which they are sustained calls for a practical test. The loss "must be actual and present." *Weiss* v. *Wiener*, 279 U.S. 333, 335; *Lucas* v. *American Code Company*, *supra*; *Eckert* v. *Burnet*, 283 U.S. 140, 141, 142.

In the instant proceeding a fire occurred in the fiscal year 1921. During the fire the electric power was shut off for forty five minutes and during that time the fire gained such headway that it destroyed

considerable property. The petitioner believed that the shutting off of the power was due to the negligence of an employee of the Electric Co. and that as a result of such negligence it suffered a greater loss from the fire than it would have had it not been for such negligent acts. It believed that it was entitled to recover damages from such company to recompense it for all or part of the loss not compensated for by insurance. Petitioner did not accrue the net loss, or the loss not compensated for by insurance, on its books of account, but carried it as an asset, which account was in the nature of an account receivable, the amount of which was not determinable or certain at the time, but which it set up in the amount of the loss not compensated for by insurance. Such amount could not be determined with any degree of certainty of accuracy until the cause of action was disposed of by final judgment or compromise and settlement. The petitioner brought suit against the Electric Co. When the lower court sustained the demurrer to its complaint interposed by the Electric Co., the petitioner appealed to the state supreme court, the court of last resort. The course of events show that, although it was finally unsuccessful, there was some justification for its belief that it had a cause of action against the Electric Co., as the state supreme court reversed the order of the lower court sustaining the demurrer of the Electric Co., and, upon trial of the action, judgment, in the amount of $47,703.48, was rendered in favor of the petitioner.

The respondent argues that if the petitioner is allowed to take deduction in 1924 and 1925, the effect will be to give parties a latitude as to the years in which they will take deductions and that a taxpayer might institute a tort action and abandon the same in a year when it would be most advantageous to take the deduction, or such action might be instituted in the absence of hope of recovery to keep from being compelled to take the loss in the year of its occurrence. However, we are not concerned with suppositions and hypothetical questions. No question of fraud has been raised, in fact no question has been raised as to lack of good faith on the part of the petitioner in bringing suit or otherwise. The bringing of a tort action to recover damages to determine a deductible loss affords no greater " opportunity for juggling so facile and so obvious " than an action for damages on breach of contract. *Allied Furriers Corp.*, *supra*. See *Douglas County Light & Water Co.* v. *Commissioner*, *supra*.

In *Lucas* v. *American Code Co., supra*, taxpayer also made claim for a refund of taxes based upon its failure to deduct from its 1919 gross income the amount for which judgment was recovered against it in 1922, on a contested liability for a breach of contract in 1919.

The court held that the loss was not deductible in 1919 when the breach occurred, in view of the fact that the liability for breach was denied and strenuously contested and the amount of damages, if any, was wholly unpredictable.

See also *Lewellyn* v. *Electric Reduction Co.*, 275 U.S. 243, in which case the United States Supreme Court held that a loss was not deductible in 1918, in which year the terms of a contract were breached by the seller, where it appeared that the taxpayer did not charge off the loss on its books in 1918 and continued to carry such item in a " bills receivable " account, did not claim any loss in 1918 on its return for that year, and instituted three suits, (1) against the seller, in which judgment was secured in 1919, which remains unsatisfied; (2) against a certain broker, wherein judgment was rendered in favor of the broker in 1922; and (3) against certain bankers, which was discontinued in 1921 as useless as such bankers had been adjudicated bankrupt.

In *Lucas* v. *American Code Co.*, *supra*, the Court, referring to the *Lewellyn* case, stated that " The case at bar is in principle more like *Lewellyn* v. *Electric Co.* * * * "

The respondent cites *Lewellyn* v. *Electric Reduction Co.*, *supra;* *Lucas* v. *American Code Co.*, *supra*, and *Dresser* v. *United States*, 55 Fed. (2d) 499. However, those cases, in our opinion, do not support the position taken by the respondent here. In each of these cases the deduction of the loss was not allowed in the year in which the event occurred which gave rise to the loss. In *Lucas* v. *American Code Co.*, *supra*, the breach of the contract occurred in 1919. The breaking of the contract was the act which gave rise to the loss claimed. The Court stated:

Obviously, the mere refusal to perform a contract does not justify the deduction, as a loss, of the anticipated damages. For, even an unquestionable breach does not result in loss, if the injured party forgives or refrains from prosecuting his claim. And, when liability is contested, the institution of a suit does not, of itself, create certainty of loss.

In *Lewellyn* v. *Electric Reduction Co.*, *supra*, a breach of contract in 1918 gave rise to the claimed loss, but the Court stated:

But we do not think that a loss resulting from a buyer's prepayment to a seller who proves to be irresponsible is necessarily sustained, in the statutory meaning, as soon as the money is paid. The statute was intended to apply not only to losses resulting from the physical destruction of articles of value but to those occuring in the operations of trade and business, where the business man has ventured on a course of action in the reasonable expectation that the promised conduct of another will come to pass. Not only the future success of the business but its present solvency depends on the probable accuracy of his prophecy. *Only when events prove the prophecy to have been false can it be said that he has suffered.*

In *Dresser* v. *United States, supra*, taxpayer claimed a loss in 1919 on certain stock of a corporation, which was in the process of liquidation. The expiration of the corporation's charter, which made necessary its liquidation, was the event which gave rise to the loss claimed. However the court stated:

The statute allows the deduction of a loss when it has been *sustained, and we think it is the clear purpose of the act to allow the deduction in the year in which it may appear that the taxpayer received from the property all that it is possible for him to receive.* * * * [Italics supplied.]

As in most, if not all, general rules, there is an exception. In *Lucas* v. *American Code Co., supra*, the Court called attention to the exception to the general rule applicable in the deduction of losses, as follows:

Exception is made, however, in the case of losses which are so *reasonably certain in fact and ascertainable in amount* as to justify their deduction *in certain circumstances*, before they are *absolutely realized*.

Such exception to the general rule is well illustrated in *Martin Veneer Co.*, 5 B.T.A. 207. In that case the fire occurred on December 30, 1919, and the building and merchandise were destroyed before midnight of December 31, 1919. The insurance was paid on January 28, 1920. The taxpayer claimed that it sustained the loss in 1920, but the Board held that the loss was not deductible in 1920. In this *Martin Veneer Co.* case there was no controversy with the insurance company or anyone else as to the right to be compensated " by insurance or otherwise." No claim for compensation was made against anyone except the insurance company and no litigation was instituted against anyone. Obviously that case is distinguishable from the instant proceeding.

Apparently in citing *Lucas* v. *American Code Co., supra*, it was the purpose of the respondent to show that this proceeding is within the exception to the general rule. However, the facts as established in this proceeding bring it within the general rule and not within the exception.

In this proceeding it appears that the petitioner did not appeal from the judgment of the trial court. Such court rendered a judgment in the amount of $47,403.48 in favor of the petitioner. The total loss not compensated for by insurance was $165,739.74. However, the Electric Co. appealed from the judgment of the trial court on the ground that on the facts as found by the jury and as established by the evidence no cause of action had been established against it. The appeal on such ground could only result in an affirmation of the judgment of the trial court by the state supreme court, the court of last resort, or a reversal of the judgment of the trial court and the dismissal of the action. Therefore the loss to the extent of the

judgment of the trial court in the amount of $47,403.48 remained uncertain and undetermined until the decision of the supreme court on the appeal. However, since the petitioner did not appeal from the decision of the trial court, the loss to the extent of the difference between the amount of the loss not compensated for by insurance, of $165,739.74 and the amount of the judgment rendered in the lower court of $47,403.48, or $118,036.26, was made certain and established in the fiscal year 1924 when the trial court rendered judgment and the petitioner did not appeal therefrom. Since the loss in the instant proceeding was made certain, definite and final to the extent of $118,036.26 in the fiscal year 1924, that portion of the loss should be deducted from gross income in such fiscal year. The state supreme court reversed the trial court and remanded the case with instructions to dismiss the complaint in the fiscal year 1925. Since by such decision the petitioner was unable to recover the $47,403.48, the amount of the judgment rendered by the trial court in its favor, and such decision was final and conclusive as to this item, the amount of $47,403.48 should be deducted from gross income in the fiscal year 1925. *Allied Furriers Corp.*, supra; *Missouri Valley Bridge & Iron Co.*, 14 B.T.A. 1162; *Lucas* v. *American Code Co.*, supra; *Lehigh & Hudson River Ry. Co.*, 13 B.T.A. 1154; affd., *Lehigh & Hudson River Ry. Co.* v. *Commissioner*, 38 Fed. (2d) 1015; certiorari denied, 281 U.S. 748; *Consolidated Tea Co.* v. *Bowers*, 19 Fed. (2d) 382; *Central Trust Co.*, 13 B.T.A. 924; affd., *Central Trust Co.* v. *Burnet*, 45 Fed. (2d) 922.

In *Missouri Valley Bridge & Iron Co.*, supra, the Board stated as follows:

When the Court of Claims rendered its judgment adverse to the petitioner and the petitioner declined to appeal therefrom, its claim for any further compensation or payment under the contract became completely and finally adjudicated and foreclosed and the loss on the contract became final and complete at that time, if not before.

In *Consolidated Tea Co.* v. *Bowers*, supra, where it appeared that an appeal, decided in 1921, was taken from the judgment of the trial court rendered in 1919, the court stated:

From a tax income standpoint, both logical and practical, reasons seem to me to support the conclusion that a loss should be deductible, not in the year when the judgment was rendered, but in the year when the claim was adjudicated to be final and definite, or possibly, under certain circumstances, in the year when the claim originated.

In *Lucas* v. *American Code Co.*, supra, it was held that the loss was not realized or sustained in the year in which the decision of the court of original jurisdiction was rendered, where an appeal

was taken to an intermediate court and from there to the court of last resort.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MORRIS, MURDOCK, and MATTHEWS dissent.

---

ADAMS, dissenting: I am unable to agree with the opinion of the majority of the Board, and therefore file this, my dissent.

The facts were stipulated and are set out in detail in the majority opinion, to which reference is made.

Petitioner, a Wisconsin corporation, during the year 1921 had certain of its properties destroyed by fire. Petitioner contended that the Janesville Electric Co. was responsible for a great part of the loss by reason of its acts of negligence, and in the year 1921 brought an action in the circuit court against that company for damages. A demurrer was sustained by the court to plaintiff's petition, from which ruling plaintiff, petitioner herein, appealed to the Supreme Court of Wisconsin, where the order sustaining the demurrer was reversed in 1922.

Afterwards, the case was tried before a jury in the circuit court, the trial resulting in a verdict and judgment for petitioner in the sum of $47,703.48. Judgment was entered in 1924.

The Janesville Electric Co. appealed from this judgment and in 1925 such judgment was reversed by the Supreme Court of Wisconsin and the action was dismissed.

On March 16, 1929, the Commissioner issued a deficiency notice addressed to the petitioner, and in a statement attached thereto, said: "It is held that a deduction of loss by fire is allowable in the year during which the property was destroyed. * * *"

The Commissioner found a deficiency for the years 1924, 1925, and 1926 in the sum of $16,184.72. From this finding, petitioner filed with the Board of Tax Appeals its petition for a redetermination of the deficiency, and as a basis for its proceeding, alleged, among other things:

The Commissioner of Internal Revenue erred in holding that the uninsured fire loss amounting to $165,739.74 growing out of a fire which occurred in the taxpayer's manufacturing plant on July 4, 1921, could be deducted only in the year 1921, and might not be taken as a deduction in subsequent years when the liability for such loss was determined by the courts.

In his answer, the Commissioner denied the above allegation in petitioner's pleading, and thus, this issue was joined.

The single question to be determined is, In what year did the deductible loss to petitioner occur?

The Revenue Act of 1921 provides:

SEC. 234 (a) (4). Losses sustained during the taxable year and *not compensated for* by insurance or otherwise; unless, in order to clearly reflect the income, the loss should in the opinion of the Commissioner be accounted for as of a different period. * * * [Italics supplied.]

The proper determination of this case depends upon the construction of the language of the act itself, and it turns upon the proper definition of the word " compensated " and the proper application of the words " compensated for " as used in the act.

The rule of statutory construction is that words in ordinary use found in a statute should be construed according to their usual and ordinary meaning, and as commonly understood.

The Century Dictionary, a standard authority, gives, among other definitions of the word " compensate ", the following:

To make suitable return to or for, as for services, loss, etc.; give an equivalent or recompense to or for; requite; remunerate, as, to compensate one for his services; to compensate one's services.

It defines the word " compensate " as follows:

The act of compensating, the state of being compensated, or that which compensates; whatever makes good loss or lack, or counterbalances variation; *payment*; *amends*; especially, an equivalent in value or the like. [Italics supplied.]

Can it be said that one has been compensated for loss or injury who only has a claim against the one whom he asserts is responsible for his loss and such claim is denied?

Can it be said that one is compensated for loss by having the right to litigate with his adversary, in which litigation he seeks to recover for his loss?

Can it be said that one who enters into a contract by which another agrees to indemnify him for a loss, is compensated for such loss by such contract, when the other party repudiates it, claims that the same is void for any reason and that no liability is on him?

Can it be said that a disputed claim is such compensation as Congress intended when it used that word in the statute? I do not think so.

It seems to me entirely illogical to say that such a claim as the petitioner in this case had against the Janesville Electric Co. is such compensation as was contemplated by the Congress in passing this act.

If the rule laid down in the majority opinion is to control, then it becomes optional with the taxpayer to say in what year it will take its deductible loss. It was optional with the taxpayer as to whether

it would prosecute its claim for damages against the Janesville Electric Co. Had it not done so, then of course the loss would have been deductible in 1921. Having elected to file its suit in the circuit court, and the demurrer having been sustained by that court, it was optional with the petitioner then to appeal or not to prosecute its claim further. If it had not appealed, then the deductible loss would have accrued on that date.

The proceeding was appealed to the state supreme court, which court in 1922 reversed the decision of the circuit court and petitioner, at that time, might have abandoned the proceeding, in which event its deductible loss would have occurred in 1922. Afterwards, in 1924, trial of the case was had in the circuit court, as a result of which petitioner obtained judgment against the Janesville Electric Co. in the sum of $47,703.48. Had the Janesville Electric Co. been satisfied with this judgment, then the deductible loss would have occurred during the year 1924, but being dissatisfied, the company appealed and the judgment was reversed by the Supreme Court of Wisconsin in 1925, after which the case was dismissed and the litigation ended.

Under the holding in the majority opinion, a part of the loss, amounting to $118,036.26, was deductible in the year 1924 when the trial court rendered judgment and the petitioner did not appeal therefrom, and the remaining portion of the loss, $47,703.48, is held to be deductible in the year 1925, the supreme court having reversed judgment of the circuit court during that year.

It seems to me that the test applied in this case by the majority opinion is not a practical one. Taxation is a very practical matter, and in my judgment, problems of taxation should be solved with this in mind, looking always and being guided by not only the letter, but the spirit of the law.

If I may illustrate: The taxpayer has valuable property destroyed, for which loss he believes that he should recover from another. He says to the Government: "My property has been destroyed; I wish to deduct that loss during the taxable year." The Government says to him: "No, you must pay the tax; you must litigate and when your litigation has been finally determined, then and not until then, may you take a deductible loss." This, it seems to me, is the height of impracticability. In many instances, such a rule would result in injustice to the taxpayer and, in many instances, in injustice to the Government. I cannot believe that such result was ever anticipated or intended by the Congress when the revenue acts were passed.

The majority opinion and the petitioner's brief cite numerous cases, most of which I believe to be clearly distinguishable from the instant case. *American Code Co.*, *supra*, is a case where the taxpayer, a cor-

poration, had discharged one of its employees whose contract with the company provided for compensation on a commission basis over a long period of years. The company undertook to deduct as loss, for the year in which it discharged the employee, its speculative and prospective loss by reason of its liability growing out of the transaction. This was not permitted. It seems to me that this case has no reasonable application to the situation with which we are dealing.

The same can be said of many of the other cases cited in the majority opinion. The doctrine laid down in *Allied Furriers Corp.*, *supra*, I believe to be erroneous.

In my judgment the reasoning of the cases from the United States Supreme Court cited in the majority opinion leads to the conclusion which I have reached here.

It is the object of the law to establish, as nearly as possible, rules by which rights and duties may be determined with certainty.

The purpose of the adoption of the Sixteenth Amendment to the Constitution is discussed by Mr. Justice Stone in the case of *Burnet* v. *Sanford & Brooks Co.*, 282 U.S. 359, the applicable portion of the opinion being as follows:

The Sixteenth Amendment was adopted to enable the government to raise revenue by taxation. It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at *regular intervals*. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation. It is not suggested that there has ever been any general scheme for taxing income on any other basis. The computation of income annually as the net result of all transactions within the year was a familiar practice, and taxes upon income so arrived at were not unknown, before the Sixteenth Amendment. * * * It is not to be supposed that the amendment did not contemplate that Congress might make income so ascertained the basis of a scheme of taxation such as had been in actual operation within the United States before its adoption. While, conceivably, a different system might be devised by which the tax could be assessed, wholly or in part, on the basis of the finally ascertained results of particular transactions, Congress is not required by the amendment to adopt such a system in preference to the more familiar method, even if it were practicable. It would not necessarily obviate the kind of inequalities of which respondent complains. If losses from particular transactions were to be set off against gains in others, there would still be the practical necessity of computing the tax on the basis of annual or other fixed taxable periods, which might result in the taxpayer being required to pay a tax on income in one period exceeded by net losses in another. [Italics supplied.]

I construe this opinion to hold that the general scheme was that at the end of each taxable year the Government should be advised by the taxpayer as to the net result of his business for that year, thus forming a basis for the computation of income tax.

In my opinion, the proper construction of the statute and the regulations thereunder is that, where the taxpayer sustains a loss

during the taxable year for which he does not receive payment or accept other character of settlement for his loss, he has not been compensated therefor during the taxable year; that he is entitled to such loss as deductible during that year, even though he has a claim against another which may either wholly or partially indemnify him for his loss.

In my opinion, revenue acts should not be rigidly or technically construed, but should receive a liberal construction which will do equity both to the taxpayer and the Government. However, when the language of the act is plain and is not susceptible of more than one construction, then it is the duty of those charged with the responsibility of construing such acts and applying them to construe and apply them as they are written. If such construction and application results in injustice, then it is for the Congress to determine whether the law should be changed.

I conclude that petitioner's loss should have been deducted in 1921.

VAN FOSSAN and LEECH agree with this dissent.