**SKARABORG INVEST USA, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 98–55.**
**Court No. 95–04–00393.**

United States Court of,
International Trade.

April 27, 1998.

Peter S. Herrick, for plaintiff, Skaraborg Invest USA, Inc.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney–in–Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Barbara Silver Williams), for defendant.

## OPINION

TSOUCALAS, Senior Judge.

Skaraborg Invest USA, Inc. ("Skaraborg") challenges the United States Customs Service's ("Customs") classification of its import merchandise under Harmonized Tariff Schedule of the United States ("HTSUS") 8477.10.60 (1991), and claims that a trial is necessary to establish whether the subject merchandise qualifies for duty-free treatment under HTSUS 9801.00.20 or 9801.00.25. Skaraborg further asserts that, if the subject merchandise is correctly classified under HTSUS 8477.10.60, then Customs' appraisal value of $700,000 is inaccurate. The defendant asserts that no genuine issues of material fact exist for trial and moves for summary judgment.

### Background

The matter before the Court involves the April 3, 1991, importation of two injection-molding machines ("molding machines") by Skaraborg. Each molding machine is comprised of a machine, a mold and an automation system and is used to produce plastic storage boxes for compact disc records. The molding machines were manufactured in Canada by Husky Injecting Molding Systems, Ltd. ("Husky") and first imported into the United States in June 1985 and January 1986 by Data Packaging Corp. ("DPC"). The merchandise was then sold by Precision Engineering Products ("Precision") to CePe-Plast KB ("CePe") and exported to Sweden on May 7, 1989. CePe thereafter determined that the molding machines were not acceptable and, when Precision declined CePe's attempt to return the products, obtained a Swedish court judgment against Precision. *See Swedish Court Judgment*, Pl.'s App., Ex. 9 (Sept. 11, 1990). At this point, it appears that Precision was bankrupt. Skaraborg claims CePe subsequently leased the molding machines to its related company in the United States, Skaraborg, which ultimately reimported the subject merchandise.

After reimportation, Customs liquidated the merchandise under HTSUS 8477.10.60. This subheading specifically provides for injection-molding machinery for working rubber or plastic, or for the manufacture of products from these materials, other than for manufacturing shoes, at a duty rate of 3.9% *ad valorem*. Customs appraised the merchandise at $700,000, based on an invoice Skaraborg submitted at the time of entry.

Skaraborg does not contest that HTSUS 8477.10.60 is the proper classification for injection-molding machines. Rather, Skaraborg argues that a trial is necessary to establish whether the reimported subject merchandise qualifies for duty-free treatment under HTSUS 9801.00.20 or 9801.00.25. These subheadings state as follows:

9801.00.20   Articles, previously imported, with respect to which the duty was paid upon such previous importation or which were previously free of duty ... if (1) reimported, without having been advanced in value or improved in condition by any process of manufacture or other means while abroad, after having been exported under lease or similar use agreements, and (2) reimported by or for the account of the person who imported it into, and exported it from, the United States.... Free

9801.00.25   Articles, previously imported, with respect to which the duty was paid upon such previous

importation if (1) exported within three years after the date of such previous importation, (2) reimported without having been advanced in value or improved in condition by any process of manufacture or other means while abroad, (3) reimported for the reason that such articles do not conform to sample or specifications, and (4) reimported by or for the account of the person who imported them into, and exported them from, the United States ... . Free

Skaraborg further claims that, if the molding machines are correctly classified under HTSUS 8477.10.60, then Customs inaccurately appraised them at $700,000, rather than $289,051, the amount Husky valued them in a written opinion prepared for this action. The applicable statutory section dealing with the appraisal of imported merchandise states as follows:

### § 1401a. Value

### (a) Generally

(1) Except as otherwise specifically provided for. in this chapter, imported merchandise shall be appraised, for the purposes of this chapter, on the basis of the following:

(A) The transaction value provided for under sub-section (b) of this section.

(B) The transaction value of identical merchandise provided for under subsection (c) of this section, if the value referred to in subparagraph (A) cannot be determined ... .

(C) The transaction value of similar merchandise provided for under subsection (c) of this section, if the value referred to in subparagraph (B) cannot be determined.

(D) The deductive value provided for under subsection (d) of this section, if the value referred to in subparagraph (C) cannot be determined ... .

(E) The computed value provided for under subsection (e) of this section, if the value referred to in subparagraph (D) cannot be determined.

(F) The value provided for under subsection (f) of this section, if the value referred to in subparagraph (E) cannot be determined.

\* \* \*

### (b) Transaction value of imported merchandise

(1) The transaction value of imported merchandise is the price actually paid or payable for the merchandise when sold for exportation to the United States, plus amounts equal to ... [certain other costs].

19 U.S.C. § 1401a.

The defendant responds that a trial is not necessary, as Skaraborg has simply failed to establish in the administrative proceedings, or before this Court, that its merchandise satisfies the necessary factors enumerated in HTSUS 9801.00.20 or 9801.00.25 to qualify for duty-free status under the subheading. The defendant further responds that it properly valuated the molding machines according to 19 U.S.C. § 1401a (1988), the applicable regulations and the invoice Skaraborg submitted. Def.'s Mem. Supp. Mot. Summ. J. 1–20; Def.'s Reply Mem. in Supp. Mot. Summ. J. 1–21.

### Discussion

On a motion for summary judgment, it is the function of the court to determine whether there are any factual disputes that are material to the resolution of the action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In ruling on motions for summary judgment, if no genuine issue of material fact exists, the court must determine whether either party "is entitled to a judgment as a matter of law." USCIT Rule 56(d). The issue of whether an imported article has been classified under an appropriate tariff provision entails a two-step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the article comes within the description of such terms as properly construed. *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1391 (Fed.Cir.1994). The first step is a question of law, whereas the second is a question of fact. *See Univer-*

*sal Elecs., Inc. v. United States,* 112 F.3d 488, 491 (Fed.Cir.1997). Customs' classification is assumed by statute to be correct and plaintiffs bear the burden of showing otherwise. *Mita Copystar Am. v. United States,* 21 F.3d 1079, 1082 (Fed.Cir.1994) (citing 28 U.S.C. § 2639(a)(1)). However, this presumption extends only to Customs' factual findings, and not its interpretation of relevant law. *See Rollerblade, Inc. v. United States,* 112 F.3d 481, 484 (Fed.Cir.1997); *Goodman Mfg., L.P. v. United States,* 69 F.3d 505, 508 (Fed.Cir.1995). Pursuant to 28 U.S.C. § 2640(a), Customs' classification decision is subject to *de novo* review. The Court must determine "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878 (Fed.Cir.1984).

### 1. *Motion for Trial and Classification of the Molding Machines*

The threshold issue before the Court with respect to plaintiff's motion for trial regarding its proposed classifications is whether Skaraborg has established a *prima facie* case. The Court concludes that Skaraborg has not.

As a preliminary matter, the subject merchandise does not qualify for duty-free entry under HTSUS 9801.00.25. The first requirement for classification under this subheading states that merchandise must have been exported within three years of the previous importation. It appears that Skaraborg has abandoned this argument, first by responding that Customs' interrogatory question regarding the three-year limitation was not applicable, and then by choosing not to address the argument in its brief before the Court. *See Skaraborg's Response to Interrogatories,* Def.'s App., Ex. 1, at ¶ 23(a) & (b) (Jan. 8, 1996); *see generally* Skaraborg's Opp'n to Mot. Summ. J. Nevertheless, Skaraborg admits that the molding machines were first imported to the United States in June of 1985 and January of 1986, and exported to Sweden on May 7, 1989, *Skaraborg's Complaint,* ¶¶ 15 & 16 (May 28, 1995), a period ostensibly longer than three years.

■ HTSUS 9801.00.20 covers reimported merchandise: (1) upon which duty was paid at the time of previous importation; (2) that has not been advanced in value or improved in condition while abroad; (3) that was exported under a lease or similar use agreement; and (4) that is reimported by or for the account of the person who imported the merchandise into, and exported it from, the United States. Skaraborg has not presented *any* evidence demonstrating that it can satisfy even one of these requirements. Nevertheless, the second factor, whether the merchandise was advanced in value or improved in condition, is not in dispute and, therefore, will not be addressed by the Court.

■ Skaraborg has not presented one iota of evidence that duty was paid on the subject merchandise at the time of previous importation but, instead, relies on its president's declaration that duty was paid on the molding machines in 1985 and 1986. Skaraborg's Opp'n to Mot. Summ. J. at 4 (referring to *Letter from Ken Swanick, President, Skaraborg Invest USA Inc., to Diane A. Zwicker, District Director, U.S. Customs Service,* Pl.'s App., Ex. 2 (May 25, 1991)). Skaraborg attempts to bolster its position by citing to one Customs Ruling in which Customs allegedly accepted a company's statement that duty had been paid on certain entries, and another in which Customs stated that "no specific documents are required to show that duty was paid on a previous importation." *Id.* (citing *Customs Ruling 560630,* Def.'s App., Ex. 8 (Sept. 10, 1997) and *Customs Ruling 559008,* Def.'s App., Ex. 8 (Apr. 27, 1995)).

■ The Court first notes that Customs rulings are not binding on the Court. *See United States v. Hitachi Am., Ltd.,* 21 CIT ——, ——, 964 F.Supp. 344, 361 (1997) ("In a strict sense all Customs rulings are dicta because they are not binding on the Court."); *see also C.J. Tower & Sons v. United States,* 33 Cust. Ct. 14, 17, C.D. 1628 (1954) (discussing the non-binding nature of Customs' rulings). Nevertheless, Skaraborg completely misrepresents the two rulings upon which it relies. Most notably, *Customs Ruling 560630* is clearly distinguishable, as it did not even discuss whether Customs was required to accept an importer's assurances regarding

the previously paid requirement of HTSUS 9801.00.20. *See* Def.'s App., Ex. 8. Rather, this ruling involved whether a U.S. apparel company's goods would qualify for free re-entry under the subsection if they were exported to the U.S. company's United Kingdom-related company for display at a fashion show. *Id.* at 1. For the purpose of rendering its decision, Customs assumed that all previous import duties had been paid on each foreign-origin article. *Id.* at 2–3. Thus, Customs relied upon the company's assurances *solely* for the purpose of rendering its ruling regarding the proposed exportation and re-entry of the company's merchandise.[1]

Turning to the next requirement, there has been no evidence that the molding machines were exported by Precision to CePe pursuant to a lease or similar use agreement. Indeed, Skaraborg's interrogatory responses and the evidence before the Court unquestionably indicate that the molding machines were *sold* by Precision to CePe. *See Skaraborg's Response to Interrogatories,* Def.'s App., Ex. 1, at ¶ 8(a) (stating that Precision *"sold* the equipment to CePe ....") (emphasis added); *Precision Invoice No. 895060,* Def.'s App., Ex. 2 (May 7, 1989) (describing the two molding machines at issue under the title "Description of Equipment *Sold"* to CePe) (emphasis added); *Skaraborg's Complaint,* at ¶ 16 ("Precision ... *sold* the merchandise at issue to CePe ....") (emphasis added).[2] Despite the consistent explicit language to the contrary, Skaraborg cites to *Werner & Pfleiderer Corp. v. United States,* 17 CIT 916, 918 (1993) and *Customs Ruling N.Y. A86348,* Def.'s App., Ex. 9 (Sept. 6, 1996), for the proposition that its contract with CePe was a use agreement. Skaraborg further argues that, because CePe returned the molding machines to Skaraborg when they

failed to satisfy certain European specifications, the machinery was, in effect, exported to Sweden by Precision for testing, *i.e.,* CePe's agreement with Precision was a "sale on approval" contract. Skaraborg's Opp'n to Mot. Summ. J. at 5–7.

■ First, the Court concludes that Skaraborg waived its claim that the subject merchandise was exported pursuant to a lease or similar use agreement by responding to Customs' relevant interrogatory requests as "not applicable." *See Skaraborg's Response to Interrogatories,* Def.'s App., Ex. 1, at ¶¶ 13–15.

■ Nevertheless, Skaraborg's argument is far-fetched, at best. This court has equated a "similar use agreement" to a loan for temporary use. *See Werner,* 17 CIT at 918, 1993 WL 328031. A "loan" is broadly defined as "[a] lending.... Anything furnished for *temporary* use to a person at his request, on condition that it shall be returned...." **Black's Law Dictionary** 936 (6th ed.1990) (emphasis added). A contract of sale providing for payment after production begins, *Precision Invoice No. 895060,* Def.'s App., Ex. 2, at 2, or even after the produced articles are inspected by the purchaser, does not create or imply the temporary relationship necessary for a lease or similar use agreement. First, Precision's sale to CePe does not explicitly or implicitly mention a transfer of merchandise for temporary use. *See* Def.'s App., Ex. 2. Further, Skaraborg completely misrepresents *Werner,* in which the shipping invoice regarding the subject merchandise clearly stated that the subject "items are property of [the U.S. company] ... on *loan* to [the foreign company] for a 5–week period ... [and are] to be

---

**1.** Skaraborg's reliance on *Customs Ruling 559008* is also misplaced. In that case, while Customs noted that no specific documentation was necessary to demonstrate that duty was paid on a previous importation, Customs found that the protestant had established the statutory requirements for duty-free entry under the subsection to the satisfaction of the Customs district director. *Customs Ruling 559008,* Def.'s App., Ex. 8, at 3–4. Customs appeared to be particularly swayed by the protestant's affirmation that the device was 20 years old and was imported when the plant first opened. *Id.* at 3.

**2.** The Court further notes that CePe admitted that its contract with Precision was a sale in a written correspondence to Customs, complaining that "[i]t was our understanding that since the equipment was *purchased* from the U.S., it would not be Dutiable upon return to the U.S." *Letter from Diane Landen, CePe, to District Director of Customs,* Pl.'s App., Ex. 11 (Apr. 29, 1991) (emphasis added).

returned to the United States after that period." 17 CIT at 916, 1993 WL 328031 (emphasis added). The contract in *Customs Ruling N.Y. A86348* also provided that the merchandise was to be returned to the U.S. supplier. *See* Def.'s App., Ex. 9, at 2. Thus, the contracts in *Werner* and *Customs Ruling N.Y. A86348* were explicitly constructed as loans, whereas the contract at issue unequivocally was, and remained, a sale, despite CePe's unrealized performance expectations and ultimate "return" of the merchandise to Skaraborg. Similarly, even if the Precision–CePe agreement was a sale on approval, such a contract is not magically transformed into a use agreement with the buyer's dissatisfaction; it remains a sale. Indeed, **Black's Law Dictionary** at 1339, defines a sale on approval as "[a] species of conditional *sale,* which is to become absolute only in case the buyer, on trial, approves or is satisfied with the article *sold.*" (emphases added).

Finally, Skaraborg has not documented or substantiated its bald assertions that Precision is the "successor" to DPC, or established the nature and extent (if one in fact exists) of the relationship between the three U.S. companies. The statutory language specifically requires that the merchandise be "reimported by or for the account of the person who imported it into, and exported it from, the United States." HTSUS 9801.00.20. Thus, even if DPC is the same party as Precision, *Skaraborg* must also be the same party as Precision/DPC, or Skaraborg must be acting as Precision/DPC's agent. Instead of demonstrating such a relationship, however, plaintiff attempts to fill this gap and circumvent the same party requirement by focusing on the HTSUS language "for the account of." Skaraborg maintains that, because CePe's *intent* was to return the subject merchandise to Precision, CePe's exportation to Skaraborg was the equivalent of an importation "for the account of" Precision, which refused to accept the

goods. In support of its position, Skaraborg relies on *Customs Ruling 560256*, Def.'s App., Ex. 11 (July 23, 1997) and *Equitable Trust Co. v. Rochling*, 275 U.S. 248, 48 S.Ct. 58, 72 L.Ed. 264 (1927). Skaraborg's Opp'n to Mot. Summ. J. at 4–5.

The Court concludes that this argument lacks substance and demands an imaginative leap in logic and jurisprudence. Regardless of CePe's intentions or the catalyst for the reimportation, a contract for sale or lease between CePe and Skaraborg does not create or imply a relationship in which Skaraborg is said to act on Precision's behalf. By Skaraborg's own admission, Precision "refused to take back the merchandise...." Skaraborg's Opp'n to Mot. Summ. J. at 5. Moreover, Skaraborg's reliance on *Customs Ruling 560256* and *Equitable* is, at best, misplaced.[3] *Customs Ruling 560256* was a prospective ruling that assumed, solely for the sake of determining that the factual predicate claimed by the importer was true, that merchandise was exported and returned "by or for the account of" the importer. Def.'s App., Ex. 11, at 2 ("[W]e find that equipment exported by [the U.S. company] ... may be entered under subheading 9801.00.85, HTSUS, if the merchandise is imported by or for the account of [the U.S. company]."). This ruling never evaluated whether divisions or subsidiaries possibly *unrelated* to the importer could import merchandise "for the account of" the importer. *Id.* Further, *Equitable* does not stand for the proposition that the parties' intentions dictate what "for the account of" means in a Customs statute, as Skaraborg suggests. Rather, the *Equitable* Court decided that, when *parties* use the phrase "for account of" under banking law at the time, an agency relationship is not always intended. 275 U.S. at 253, 48 S.Ct. 58.

Consequently, even if one assumes that Precision is the same party as DPC, Skaraborg has not demonstrated that it reimported

---

3. The Court is particularly troubled by Skaraborg's misrepresentation that the *Equitable* Court defined "for account of" as a phrase "to be construed in the light of the intention of the parties as revealed by all the circumstances...." Skaraborg's Opp'n to Mot. Summ. J. at 5. First, the Supreme Court did not actually *define* "for account of" in *Equitable* but, rather, attempted to discern the parties' intentions in using the phrase. *See* 275 U.S. at 252–54, 48 S.Ct. 58. Further, the language Skaraborg cites was not a direct quote from the case, as Skaraborg suggests, but, rather, derives from the case reporter headnotes, which are neither binding nor persuasive precedent on this Court.

the molding machines "for the account of" Precision/DPC within the context of HTSUS 9801.00.20 and, therefore, has failed to satisfy the same party requirement.

A trial is a valuable tool designed to aid the search for truth between contested issues of fact. This case does not present allegations necessitating a trial for the resolution of factual issues. Customs served Skaraborg with a comprehensive set of interrogatories and requests for the production of documents. After several extensions of time to respond, Skaraborg finally supplied a seriously deficient and largely irrelevant response, *see Skaraborg's Response to Interrogatories*, Def.'s App., Ex. 1, which it failed to supplement despite Customs' repeated written correspondences, telephone calls and, ultimately, a motion to compel that was ignored. Skaraborg simply failed to present any tangible documentation during discovery to support its hollow claims of entitlement and the Court refuses to permit Skaraborg to abuse the Constitutional privilege of a trial. This case borders on frivolous and the Court cautions Skaraborg and its counsel against the future waste of administrative and court resources.

Having determined that there are no genuine issues of material fact in dispute and that a trial is not necessary in this case, the Court must determine whether Customs properly classified the subject merchandise. HTSUS 8477.10.60 specifically provides for injection-molding machinery for working rubber or plastic, or for the manufacture of products from these materials, other than for manufacturing shoes. The molding machines at issue clearly fall within this description. Therefore, upon review of the HTSUS and in the absence of any evidence to the contrary, the Court agrees that Customs properly classified the subject merchandise under HTSUS 8477.10.60.

## 2. *Appraisal of the Molding Machines*

■ Customs valued the subject merchandise according to an invoice Skaraborg submitted at entry, stating "Value for customs USD 700,000." *See CePe–Skaraborg Invoice,* Def.'s App., Ex. 3 (Mar. 22, 1991). Skaraborg asserts that, if the subject merchandise is correctly classified under HTSUS 8477.10.60, then Customs inaccurately appraised the subject merchandise at $700,000, rather than $289,051. According to Skaraborg, the $700,000 on the invoice it submitted is the insured value of the molding machines during transportation, which reflects the actual merchandise cost ($289,051) plus the legal fees incurred in claiming clear title to the equipment ($410,949). *See Skaraborg's Response to Interrogatories,* Def.'s App., Ex. 1, at ¶ 11(a). Plaintiff contends that, because the molding machines were imported as rentals, no monetary transaction under subsection 1401a(a) existed. As subsections 1401a(b)-(e) are therefore inapplicable, Skaraborg maintains that the subject merchandise must be appraised pursuant to section 1401a(f) [4] and the "other reasonable means" principle of Article 7 of the GATT Valuation Agreement. Skaraborg's Opp'n to Mot. Summ. J. at 8–9 (citing *Customs Ruling 545112* (June 7, 1993)). Skaraborg insists that the evidence of market value it proffers in Husky's written opinion, prepared solely for this action, is such a reasonable means. *See id.* (referring to *Husky's Valuation Letter,* Pl.'s App., Ex. 6 (Dec. 18, 1991)); *see also Skaraborg's Response to Interrogatories,* (Def.'s App., Ex. 1, at ¶ 9(a)).

First, the clear language in the invoice Skaraborg provided to Customs unequivocally provides that the value of the molding machines is $700,000 for customs purposes. Def.'s App., Ex. 3.

Second, Skaraborg has not demonstrated that the agreement between CePe and Skaraborg was a lease. The sole evidence of *any* relevant relationship between the two parties, the invoice Skaraborg submitted at the time of entry, is devoid of any mention of a purchase price or terms. *See CePe–Skaraborg Invoice,* Def.'s App., Ex. 3. In fact, the only lease agreement Skaraborg has produced is one between Skaraborg and Skaraborg Invest AB. *See Skaraborg–Skaraborg*

---

4. Skaraborg actually cites to subsection 1401(f). Skaraborg's Opp'n to Mot. Summ. J. at 8. However, as no such section exists, the Court will assume Skaraborg intended to cite to subsection 1401a(f).

*Invest AB Lease Agreement*, Def.'s App., Ex. 5 (June 1, 1991). However, plaintiff never explained this separate entity's relationship to Skaraborg and CePe or its connection to the reimportation of the subject merchandise to the United States.

Finally, even assuming that no transaction value existed because the molding machines were leased to Skaraborg, there is no authority requiring or suggesting that Customs resort to an manufacturer's or other "expert's" estimate of merchandise worth. Rather, the statute and implementing regulation specify other means of valuation using sales of identical or similar merchandise, deductive sales value, computed value or a value derived from these methods. *See* 19 U.S.C. § 1401a(a)(B)-(F); *see also* 19 C.F.R. § 152.107.[5] Nevertheless, such a determination is not necessary, as Customs properly valuated the merchandise at issue according to the clear language in the invoice Skaraborg provided.[6]

### Conclusion

Skaraborg has failed to established that a trial is necessary to determine whether the molding machines at issue are entitled to duty-free treatment under HTSUS 9801.00.20 or 9801.00.25. Skaraborg has also failed to demonstrate that Customs inaccurately appraised the molding machines. Consequently, Skaraborg's motion for trial is denied. The Court grants the defendant's motion for summary judgment, concluding that Customs properly classified the subject merchandise under HTSUS 8477.10.60 and accurately appraised the subject merchandise.

---

5. In *Customs Ruling 545112*, Customs first determined that it could not appraise the merchandise in that case by employing subsections 1401a(b)-(e). Only then did Customs use its authority under subsection 1401a(f) to appraise the merchandise by "permit[ting] the rental value of the equipment over its full economic life to represent the value of the merchandise." *Id.* If such a method were utilized in this case and the lease between Skaraborg and Skaraborg Invest AB is a valid measure of the rental value of the molding machines, their full economic lives would have to be less than 13 months for their total value to be less than $289,051.

6. Following Skaraborg's suggested valuation method also reveals patently absurd and baseless calculations. First, Skaraborg's assertions that

### JUDGMENT

This case having been duly submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that Skaraborg Invest USA, Inc.'s motion for trial is denied; and it is further

**ORDERED** that the United States Customs Service properly classified the merchandise at issue under HTSUS 8477.10.60 and properly appraised the merchandise at $700,000; and it is further

**ORDERED** that defendant's motion for summary judgment is granted; and it is further

**ORDERED** that this case is dismissed.

the legal fees in securing title to the molding machines amounted to $410,949 outrightly contradicts the judgment CePe obtained against Precision, which specifies legal fees of a mere $3,000 when converted to U.S. dollars. *See* Def.'s App., Ex. 4. Moreover, the invoice between Precision and CePe demonstrates that CePe paid Precision $650,000.00 for the subject imports, an amount far closer to $700,000 than to $289,051. *See* Def.'s App., Ex. 2. In addition, the lease agreement between Skaraborg and Skaraborg Invest AB calls for the payment of $425,000 for 19 months of use, which includes a 7–month "rent free period." *See* Def.'s App, Ex. 5, at ¶ 3.1. This amounts to a yearly rate of $268,421, which, according to Skaraborg, is almost the full value of the merchandise.