## PIKE COUNTY COAL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7189.    Decided July 31, 1926.

1. Value of leases and options acquired for stock determined for the purpose of computing the annual deduction on account of the exhaustion thereof.

2. Upon the evidence, *held*, that a loss through damage to certain machinery by fire was a proper deduction for 1919.

*Robert E. McClevey* and *Jos. L. Daly* for the petitioner.
*L. C. Mitchell, Esq.*, for the respondent.

Before STERNHAGEN, LITTLETON, and TRUSSELL.

This proceeding involves a deficiency in income and profits tax in the amount of $4,393.82 for the calendar year 1919. It is claimed that the Commissioner erred in refusing to allow a deduction of $4,000 for the exhaustion of the cost of certain leases and options; also a deduction of $11,063.68, the cost of repairing certain machinery damaged by fire in October, 1918.

### FINDINGS OF FACT.

Petitioner is an Indiana corporation, organized in 1917, and engaged in mining and selling coal, its mines being at Petersburg and its offices at Chicago, Ill. Its capital stock consisted of 500 shares of the par value of $100 each. In May, 1917, 100 shares were sold for cash at par and 400 shares were issued to one Donald R. Lindley in payment for certain leases and options owned by him on approximately 200 acres of coal lands, for which leases and options he had

theretofore paid $27,500. The coal underlying the land covered by these leases and options was known to be of good quality, and the amount of coal recoverable was estimated at 1,800,000 tons. The probable life of the mine in May, 1917, was ten years. The leases acquired for stock and those obtained through the exercise of the options provided for royalties ranging from 3⅛ cents to 6¼ cents a ton. On the date the petitioner acquired the leases and options it also acquired the equipment of the mine which had been in operation upon the property for about five years.

In December, 1917, 125 shares of petitioner's stock were sold for $17,500 in cash, and in April, 1917, 250 shares were sold for $60,000 in cash. The petitioner was allowed a deduction of $4,000 from gross income for each of the years 1917 and 1918, as exhaustion of its leases.

The actual cash value of the leases and options at the time acquired for stock was $40,000.

On October 18, 1918, a fire occurred at petitioner's mine, resulting in the destruction of certain buildings and equipment. In addition to the property destroyed, certain machinery, consisting of motor generators, electric switchboards, electrical hoist apparatus, etc., was damaged by the fire. The extent of the damage to this machinery could not be determined by the petitioner until the machinery had been returned to the manufacturers and repaired. Immediately after the fire and prior to December 31, 1918, petitioner reconstructed and replaced the equipment, which had been completely destroyed, at a cost of $22,698. It credited against this amount the insurance collected, in the sum of $14,872.49, and deducted the difference of $7,825.51 from gross income as a loss sustained in the year 1918. This deduction was allowed by the Commissioner. Within the first six months of 1919, the machinery which had been returned to the manufacturers for repairs was repaired and returned to the petitioner at a cost of $14,872.49. This amount the petitioner deducted from gross income for 1919 as a loss sustained in that year. The deduction was denied by the Commissioner upon the ground that it should have been claimed for the year 1918.

OPINION.

LITTLETON: Upon the evidence, which shows that the coal underlying the land covered by the leases and options acquired for stock was of a high quality and amounted to at least 9,000 tons an acre, and that the petitioner's stock at the time of the incorporation sold at par for cash, and a short time thereafter at $240 a share, we are convinced that the actual cash value of the leases was $40,000 as claimed. The petitioner is, therefore, entitled to a deduction of

$4,000 for 1919, representing the exhaustion of the cost of the leases over the life of the mine of ten years.

Section 234 (a) (4) of the Revenue Act of 1918 provides that, in computing the net income, there shall be allowed as deductions losses sustained during the taxable year and not compensated by insurance or otherwise. After the fire on October 8, 1918, the petitioner found that certain of its machinery had been damaged. To what extent, it did not know. It had no way of ascertaining the amount of the damage, except by returning the machinery to the manufacturer and having it repaired. Most of the machinery consisted of electrical apparatus and the evidence shows that the petitioner was not in a position during 1918 to judge with any degree of accuracy, or to establish from any information in its possession, the amount of the damage caused to it.

The statute contemplates that a deduction shall be allowed when a loss has in fact and in truth been sustained, and the establishment of the loss is a question of fact in each case and may not always depend upon the happening of any particular event. In order to have been in a position to claim a deduction in 1918, the taxpayer would have been required to justify, with at least some degree of accuracy, the amount of the loss; otherwise the deduction from gross income for 1918 would have represented a mere guess, in all probability, unjust either to the Government or to itself. It is evident, therefore, that whatever amount the petitioner might have computed, with no more information than it had, would have been conjectural, because it was not in possession of information necessary to enable it to make such computation.

The petitioner, believing that the machinery would not be a total loss, proceeded in good faith to determine the loss which it had actually sustained by returning it to those who were in a position best to judge the extent of the damage. By so doing, it determined, during 1919, that the actual loss sustained on account of damage to the machinery was $14,872.49.

The facts in this proceeding distinguish it from the issue involved in the *Appeal of Producers Fuel Co.*, 1 B. T. A., 202, in that the Producers Fuel Co. was in possession of information which enabled it to determine, at least approximately, the amount of its loss, and it made such a determination.

From the facts presented in this proceeding, we are of the opinion that the loss of $14,872.49 was sustained in the year 1919 and constituted a proper deduction from gross income in that year.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*