ALFONSO VALDÉS COBIÁN, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; SOL LUIS DESCARTES, TREASURER, Intervener.

No. 242. Argued May 8, 1950.—Decided July 7, 1950.

---

*J. Alemañy Sosa* for petitioner. *Vicente Géigel Polanco, Attorney General,* and *Manuel J. Medina Aymat, Assistant Attorney General,* for intervener, respondent in the main case.

MR. JUSTICE SNYDER delivered the opinion of the Court.

We granted the petition of Alfonso Valdés Cobián for certiorari to review the decision of the Tax Court involving income tax deficiencies notified to him by the Treasurer and affirmed by the lower court for 1939 and 1940.

The first assignment is that the Tax Court erred in refusing to sustain the contention of the taxpayer that the 1939 deficiency had prescribed. Valdés filed his 1939 return on March 15, 1940. On June 14, 1945 the Treas-

urer notified him of the deficiency therefor. On June 25, 1945 the taxpayer moved for reconsideration and an administrative hearing. The hearing was held on October 4, 1945, and the decision of the Treasurer ratifying the notice of deficiency was notified on February 24, 1947. Valdés filed his complaint in the Tax Court on March 24, 1947.

Under § 60(a) (1) of the Income Tax Act, as amended by Act No. 31, Laws of Puerto Rico, 1941, the tax must be assessed within 7 years after the return was filed. But § 60(b), as amended by Act No. 23, Laws of Puerto Rico, 1941, Special Session, provides that "The period within which an assessment is required to be made by this Section in respect of any deficiency shall be extended (1) by thirty (30) days if a notice of such deficiency has been mailed to the taxpayer under subdivision (a) of Section 57 and no appeal has been filed with the Court of Tax Appeals of Puerto Rico, and (2) if an appeal has been filed, then the prescription period shall be extended by ninety (90) days after the final decision of the board."

Pursuant to § 60(b), the 7–year period during which the Treasurer must assess the deficiency is automatically extended 30 additional days, provided the period of 7 years has not yet expired when the Treasurer notifies the taxpayer of his decision denying reconsideration. This 30–day period is primarily for the benefit of the taxpayer; it leaves him undisturbed while he decides whether to resort to the Tax Court. Consequently, under these circumstances if no complaint is filed in the Tax Court, assessment must be made within 7 years plus 30 days after the return was filed. On the other hand, if a complaint is filed in the Tax Court within the 30 days, the period for assessment is extended as indicated in § 60(b) (2).

In the instant case the 7 years provided in § 60(a) (1) would have expired on March 15, 1947, if that provision of law alone were controlling. But, as we have seen, § 60(b) (1) extends the period of assessment, after notification of

the decision of the Treasurer on reconsideration, for at least 30 days. Consequently, the Treasurer had 30 days to assess the deficiency after he notified Valdés of his decision on reconsideration on February 24, 1947. But before these 30 days expired, Valdés, on March 24, 1947, exercised his privilege of filing suit in the Tax Court. This made § 60 (b) (2) applicable and again extended the period for assessment as therein provided.

The argument of the taxpayer is that under the peculiar circumstances of this case the time in which to assess the deficiency expired on March 15, 1947. He points out that here the Treasurer waited until just before the 7-year period expired to notify the taxpayer of his decision on reconsideration. Under those circumstances, according to Valdés, the Treasurer runs the risk that on a date during the 30-day period, before the taxpayer files his complaint in the Tax Court, the 7 years will expire. His position is that under these circumstances the only remedies available to the Treasurer are a waiver of prescription by the taxpayer or a jeopardy assessment.

We think this argument flies in the face of the explicit terms of § 60 (b) (1). The latter makes no distinction between 7-year periods that are about to expire as against 7-year periods with ample time to run. Without exception, it tacks 30 days on to the seven years, provided the Treasurer's decision on reconsideration is notified within the 7 years. And here, before the 7 years plus 30 days had expired, the action of the taxpayer in filing suit brought § 60 (b) (2) into play, thereby extending further the period for assessment.

The taxpayer relies on our language in *Buscaglia, Treas. v. Tax Court; Ana María Sugar Co., Int.,* 67 P.R.R. 650, 656. But that language and *Buscaglia v. Tax Court,* 67 D.P.R. 706 (Per Curiam), are both predicated on the proposition that the 30 days are not available to the Treasurer

if 7 years have expired *before* he makes his decision denying reconsideration. But here as already noted the decision of the Treasurer was within the 7 years. Section 60(*b*) (1) therefore attaches and extends the period for assessment. The Tax Court did not err in overruling the defense of pre-scription for the 1939 deficiency.[1]

■ The second assignment is directed against the re-fusal of the Treasurer and the Tax Court to permit Valdés to deduct from his gross income for 1939 as "representation expenses" the sum of $3,000 which he allegedly spent in con-nection with the affairs of two corporations of which he was an officer. The Tax Court held that the taxpayer's testi-mony failed to show (1) in detail either the amounts, nature, or purposes of these expenses or (2) an agreement between the corporations and Valdés that the latter as an officer thereof would pay out of his own pocket for entertainment and similar expenses for the benefit of the corporations. We are unable to say there was an error of law in the manner in which the Tax Court weighed the facts on these points. The second error was therefore not committed.

■ The third assignment is that the Tax Court erred in refusing to permit the taxpayer to deduct a loss in 1939 by virtue of an explosion which occurred in 1938 in a motor launch belonging to Valdés. Here again there is no substan-tial dispute as to the law. The only question is whether the Tax Court erred in determining whether the facts justified postponing the deduction of part of the loss until 1939.

The explosion occurred on August 25, 1938. The tax-payer made a $4,000 deduction in his 1938 return as a par-tial loss. He made an additional deduction of $3,139.50 in his 1939 return on the ground that it was impossible to ascer-tain until 1939 that the explosion had resulted in a total

---

[1] For the distinction between notification of a deficiency and assess-ment thereof, see *Irizarry* v. *Tax Court, ante,* p. 178; *Buscaglia, Treas.* v. *Tax Court; Ana María Sugar Co., Int.,* 67 P.R.R. 650; *Ballester* v. *Court of Tax Appeals,* 60 P.R.R. 749, 753.

loss of the launch. The Treasurer disallowed the latter on the ground that the entire deduction should have been taken in 1938.

Section 16(a)(6) of the Income Tax Act provides for deductions in cases of this nature of "losses sustained during the taxable year . . . ". The deduction for losses differs from that for worthless debts. Deduction for a bad debt is allowable when its worthlessness is ascertained. This contrasts with the deduction for a loss, which is allowable only during the taxable year it was really sustained. *Díaz* v. *Tax Court*, 69 P.R.R. 789; *Commissioner of Internal Revenue* v. *MacDonald Eng. Co.*, 102 F. 2d 942 (C.A. 7th, 1939). The usual rule therefore is that a loss is deductible when the physical loss actually occurred. But this rule does not automatically apply in every case. A taxpayer may postpone the loss if he is able to show that during the year of the physical loss he could not be reasonably expected to have sufficient information to calculate with some degree of accuracy the amount of the loss. 5 Mertens, Law of Federal Income Taxation, § 28.50, p. 208; *Pike County Coal Corporation* v. *Commissioner*, 4 B.T.A. 625 (1926). See *Boehm* v. *Commissioner*, 326 U. S. 287 (1945); *Boston Consol. Gas Co.* v. *Commissioner of Internal Rev.*, 128 F. 2d 473 (C.A. 1st, 1942); Stuetzer, Embezzlement Losses: Time For Deduction, 4 Tax L. Rev. 195. *Cf. Commissioner of Int. Revenue* v. *Highway Trailer Co.*, 72 F. 2d 913 (C.A. 7th, 1934). But if by reasonable diligence the taxpayer could in the same year establish with fair certainty the nature and amount of the loss, he is not permitted to postpone the deduction to the succeeding year by failing to take the necessary steps therefor. *Borden* v. *Commissioner*, 101 F. 2d 44 (C.A. 2nd, 1939). On final analysis, each case depends on its own facts as to "when a loss has in fact and in truth been sustained . . . ". (*Pike County Coal Corporation* v. *Commis-*

*sioner, supra*, p. 627), with the burden on the taxpayer when he attempts to postpone the taking of a deduction for the loss.

The Tax Court recognized the foregoing rule. It distinguished the *Pike County* case precisely because it was necessary in that case to return elaborate industrial machinery which had been damaged by fire in October to the manufacturer for repair which could not be effected until some time in 1919. Here the Tax Court held that there was an unaccountable delay in the hiring of experts and in the reporting of their views. It also held that the experts could without difficulty have determined from August 25, 1938 to March 15, 1939, when the 1938 return was due, that the launch was a total loss. We are unable to say that the Tax Court committed an error of law in weighing the facts on this point.

The fourth assignment relates to the same problem considered in the second assignment, except that it involves 1940. For the reasons already noted, the fourth error was not committed.

 The fifth assignment is that the Tax Court erred in disallowing a deduction in 1940 for a bad debt in the amount of $15,000, which was allegedly incurred in 1928, pursuant to § 16 (a) (7) of the Income Tax Act.

In 1928 Valdés was a candidate for the post of Senator for the district of Mayagüez. At 11:30 a.m. of election day Valdés was advised that the voters were refusing to vote because they had not been reimbursed for their expenses in coming to town to vote and because they had no money to pay for their lunches. Valdés advanced $15,000 to certain members of the local committee of his party to be given to the voters on condition that if the elections were lost, the money need not be repaid. However, if their party won the elections, the money was to be repaid to Valdés by quota payments to be required of the municipal employees in Mayagüez. Valdés was elected and his party won the Municipal

elections. The local Committee of the party recognized the "debt", but it has never been paid. In 1940, as the result of the elections of that year, Valdés concluded that the "debt" was worthless.

We need not discuss the nature of this transaction, except to say that on its face it clearly shows that there was never any legal obligation on the part of any person or juridical entity to repay Valdés. Since no debt existed, it could not be deducted as a bad debt. *J. S. Cullinan* v. *Commissioner*, 19 B.T.A. 930 (1930), which was decided against the taxpayer, is on all fours with this case.

The decision of the Tax Court will be affirmed.

Mr. Justice Negrón Fernández did not participate herein.