SOL LUIS DESCARTES in his capacity of TREASURER OF PUERTO RICO, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; ALFONSO VALDÉS COBIÁN, Intervener.

No. 238. Argued May 8, 1950.—Decided July 7, 1950.

*Vicente Géigel Polanco, Attorney General,* and *Manuel J. Medina Aymat, Assistant Attorney General,* for petitioner. *J. Alemañy Sosa* for intervener, plaintiff in the main action.

PER CURIAM: In his 1944 tax return Alfonso Valdés Cobián deducted $3,800 as a loss he sustained by virtue of the damages caused by a storm to the plumbing system of his residence. The Treasurer of Puerto Rico disallowed the deduction on the ground that § 16 (a) (6) of the Income Tax Act only allows as deductions of this nature "losses sustained during the taxable year" and that since the loss involved herein occurred on October 14, 1943, the date of the storm, it could not be deducted in 1944. The taxpayer resorted to the Tax Court and after a hearing said court entered judgment granting the complaint and directed the Treasurer to deduct the $3,800 from the taxpayer's income in 1944. At the request of the Treasurer we issued a writ of certiorari to review said judgment.

In deciding today a similar question in certiorari No. 242, *Valdés* v. *Tax Court, ante,* p. 670, and after citing the law and the decisions interpretative of § 16 (a) (6) of the Income Tax Act we held that: (1) the usual rule is that a loss is deductible when the physical loss actually occurred; (2) as an exception, the taxpayer may postpone the deduction if he is able to show that during the year of the physical loss he could not be reasonably expected to have sufficient information to calculate with some degree of accuracy the amount of the loss; (3) each case depends on its own facts as to "When a loss has in fact and in truth been sustained . . .," *Pike County Coal Corporation* v. *Commissioner,* 4 B.T.A. 625 (1926); and (4) that the taxpayer has the burden of proof when he attempts to postpone the deduction for the loss.

We shall now determine whether this case falls under the usual rule or whether, on the contrary, the taxpayer showed that his case falls under the exception.

 In its opinion the Tax Court set forth the following findings of fact:

"At the hearing of May 24, 1949 the parties agreed that there is no discrepancy as to the amount of the loss nor with respect to the cause and nature of the damages.

"On October 14, 1943, the date of the storm, the taxpayer was in the United States, where he had gone since early in 1943 to undergo medical treatment which lasted approximately a year and a half.

"Until the middle of 1944 he saw his doctors at the rate of two or three times a week, in the Medical Center of New York and in the Johns Hopkins Hospital of Baltimore.

"His suffering was located in the eighth cranial nerve and made him dizzy and impaired his hearing. The treatment was successful and plaintiff's condition improved.

"Rodolfo Vera, who for 30 years has managed the personal affairs and business dealings of the taxpayer, was in full charge thereof here in Puerto Rico during appellant's absence because of his ailment.

"His house in Mayagüez, the supply of water of which, by private aqueduct, was the one damaged, remained furnished during his absence, a servant and two gardeners staying there as caretakers. Vera did not intervene in the administration thereof.

"Neither the damaged aqueduct nor his residence in Mayagüez were insured; and the taxpayer has received no compensation whatever for the losses in the private aqueduct involved.

"In 1943, due to World War II, it was impossible in Puerto Rico to buy metals useful for the national defense, unless a permit by means of turns therefor, was obtained from the United States Government.

"The taxpayer was unable to obtain in 1943 the necessary material to repair his aqueduct."

The court stated, among others, the following conclusions:

"3. There was no urgency nor need for the agent or administrator Rodolfo Vera to look after the damage in the private

aqueduct in plaintiff's residence, who chose, after his return to Puerto Rico, to make the necessary repairs and to recondition his dwelling.

"4. There was the inevitable delay in obtaining a 'priority' officially fixed by the Federal Government, during World War II, for the acquisition of the materials—which consisted of metals useful for the national defense—necessary and indispensable to repair the damaged private aqueduct.

"5. Under the above-mentioned circumstances the true amount of the loss could not be ascertained until after the repairs were completed.

"6. The latter were undertaken with reasonable diligence; and judging by the facts herein, it is unquestionable that the taxpayer proceeded in good faith, and that his purpose has not been to carry to another year deductions in his income which should have been made in the same year of the disaster which originated the expenses in controversy, but which did not result in a total loss easily ascertainable."

The lower court considered that two facts were sufficient to justify the taxpayer's noncompliance with § 16 (a) (6) of the Income Tax Act, to wit, his absence from Puerto Rico for more than a year and his inability to obtain a priority to purchase the materials until after he returned to Puerto Rico. We can not agree that these facts place the case at bar under the exception to the general rule established by law.

The fact that the taxpayer was absent from Puerto Rico during a year or more, regardless of the motive, is no excuse for noncompliance with the requisite of § 16 (a) (6) of the Act to the effect that deductions for losses should be made in the taxable year in which they occurred. It is incumbent on the taxpayer to regulate his affairs, business as well as personal, in such a way that during his absence the same can be properly taken care of and, consequently, the statutory requisites complied with. As corollary, the second ground can not subsist either since there is nothing in the evidence tending to show that from the date of the loss on October 14, 1943 until March 15, 1944, the taxpayer had been unable

to obtain the necessary priority to purchase the materials to repair the damage done by the storm. The taxpayer did not show that, irrespective of the requisite of the priority which he had to obtain, it was impossible to ascertain the cost of the materials during the period comprised between the aforesaid dates. We have already said that the taxpayer has the burden of proof when he attempts to postpone the deduction for the loss. The taxpayer did not comply with this requisite.

The decision of the Tax Court will be reversed and the complaint of the taxpayer dismissed.

Mr. Justice Negrón Fernández did not participate herein.