## PITTS v. PEASE et al.
### No. 5723.

Circuit Court of Appeals, Fifth Circuit.
March 24, 1930.

Rehearing Denied April 21, 1930.

Frank U. Garrard, of Columbus, Ga., J. R. Terrell, of La Grange, Ga., and Leonard Farkas, of Albany, Ga., for appellant.

Alex W. Smith, Jr., of Atlanta, Ga., and Scott Russell, C. Baxter Jones, and Walter A. Harris, all of Macon, Ga. (Jones, Jones, Johnston & Russell, of Macon, Ga., E. L. Smith, of Albany, Ga., and Harris, Harris & Popper, of Macon, Ga., on the brief), for appellees.

Before BRYAN and FOSTER, Circuit Judges, and SIBLEY, District Judge.

BRYAN, Circuit Judge.

The appellant Pitts was indorser on two notes, for $6,750 each, held by the New Georgia National Bank of Albany. The notes were secured by bonds of the Flint River Pecan Company of the par value of $163,900. An assessment of 10 per cent. upon the bonds was made against the bondholders for the purpose of retiring the notes at maturity. Assessments amounting to $8,644.50 were deposited in the bank by bondholders under an agreement that the legal title to the deposits should be in the bank but that the beneficial interest therein, subject to the bank's rights, should remain in the depositors; that the deposits should draw interest at the rate of 4 per cent. per annum until, but not after, the date of maturity of the notes, and should not be withdrawn or transferred until the notes

were paid, but that, after they were paid, the bank would account to the depositors for the amount of their deposits and for interest thereon. Pitts paid the notes before maturity, and the bank assigned to him without recourse the bonds which it held as collateral, and agreed to hold the deposits of the bondholders for his benefit. After the notes were paid, some of the depositors enjoined the bank from paying their deposits to Pitts, and, before the injunction could be dissolved, the bank failed. Pitts and two other members of the bondholders' committee, as such, but without personal liability, were makers of the notes held by the bank. They used the proceeds to take up two other notes for $13,500, payable to bearer six months after date, which they had previously given, but for which they had received only $12,500, pursuant to a resolution which purported to authorize them to accept $1,000 less than face value.

Pitts, in the decree appealed from, was given two judgments, one as a general creditor for the deposits of $8,466.50 against the receiver of the bank, and the other as a preferred creditor for $4,855.50, being the balance of the $13,500, represented by the notes which he paid, against the receiver of the bonds of the Flint River Pecan Company, but was charged with one-third of $460 paid on the original loan, which was held to be usury. His contentions on this appeal are that he ought to have been made a preferred creditor in the first named judgment, and that the amount held to be usury was paid by his committee as a part of a broker's commission for obtaining the original loan.

██ Appellant contends that the deposits of the bondholders were special, as distinguished from general, deposits, that there was created in favor of the depositors an equitable lien to which he became subrogated upon paying the notes which those deposits were given to secure. If the deposits were special, the relation between each depositor and the bank was that of cestui que trust and trustee, but, if the deposits were general, the relation between them was that of creditor and debtor. We recently held, in Early & Daniel Co. v. Pearson, 36 F.(2d) 732, that, in order to make the doctrine of equitable lien applicable, it is necessary that the property or fund involved be identified or rendered capable of identification either in its original or substituted form. A bank deposit is special where the bank becomes bailee,

and title to the deposit remains in the depositor; it is general if title passes to the bank, and the bank has the right to use the deposit in its business, being bound only to return an equal amount or any part thereof, usually on demand. Marine Bank v. Fulton, 2 Wall. 252, 17 L. Ed. 785; Commercial Nat. Bank v. Armstrong, 148 U. S. 50, 13 S. Ct. 533, 37 L. Ed. 363. It follows, we think, that the deposits of the bondholders here involved were general deposits. It is true that they were not payable on demand, but in that particular they were not different from ordinary time deposits. Under the agreement between the bank and the bondholders, the bank held the legal title to the deposits, had the right to mingle them with its other funds, and was required to pay interest. It was not contemplated that the funds deposited should be kept separate or ever be returned to the depositors, but, on the contrary, they were to be credited on the notes when the latter became due, and the bank was required to pay any surplus out of its general funds. Any beneficial interest which the depositors might have was made subject to the legal title which the bank held. The rights of the depositors are not here involved. It is unnecessary to inquire whether under other circumstances the right of subrogation would exist in favor of appellant; for in this case he waived any such right by voluntarily accepting in lieu thereof the obligation of the bank to hold until after the maturity of the notes the funds on deposit to the credit of the bondholders for his benefit. If he had not thought that obligation was good, or if he had any doubt about it, he could easily have paid the difference between the aggregate amount to the credit of the bondholders and the amount due on the notes. That the obligation turned out to be unenforceable was unfortunate for appellant, but does not change the legal situation.

██ It is usury in Georgia to charge interest at a rate in excess of 8 per cent. per annum, either directly or indirectly by way of commission for advances or discount. Parks' Code of Georgia, § 3436. Appellant's contention that $1,000 was paid to a broker is not supported by any reference to the record, and, so far as we can find, is not supported by any evidence. On the contrary, it appears that an excessive amount was paid direct to the lender pursuant to a resolution adopted by the bondholders' committee.

The decree is affirmed.