## KEYES v. PADUCAH & I. R. CO.
### No. 5995.

Circuit Court of Appeals, Sixth Circuit.
Nov. 9, 1932.

G. W. Norton, Jr., of Louisville, Ky. (Charles W. Milner and Humphrey, Crawford & Middleton, all of Louisville, Ky., on the brief), for appellant.

J. C. Doolan, of Louisville, Ky. (Trabue, Doolan, Helm & Helm, of Louisville, Ky., and Fitzgerald Hall, of Nashville, Tenn., on the brief), for appellee.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

Appellee brought suit in the court below against the sheriff of McCracken county, and others, seeking to enjoin the collection of certain taxes. A temporary injunction was sought and granted. Instead of requiring the plaintiff to execute bond as a condition precedent to the issue of the temporary injunction, the order contained the following provision: "This injunction is conditioned upon deposit by plaintiff in the

612

National Bank of Kentucky of Eight Thousand Dollars, to abide the event of this cause, and it appearing to the court that this has been done, said sum so deposited shall be at all times subject to the order of this court."

In compliance with the order, appellee deposited with the National Bank of Kentucky a draft for $8,000 and a copy of the order of the court. The bank executed its receipt, which, after reciting the entry of the order by the court, concludes:

"Whereas, the National Bank of Kentucky is willing to act as depository for that purpose, and in obedience to said order.

"Therefore, the National Bank of Kentucky hereby acknowledges receipt, from the Paducah & Illinois Railroad Company, of a draft dated June 11th, 1929, in the sum of Eight Thousand ($8000.00) Dollars, drawn by Fitzgerald Hall on L. E. McKeand, Treasurer of the Nashville, Chattanooga & St. Louis Railway at Nashville, Tennessee, and will when said draft shall have been cleared acknowledge receipt in writing of said cash; it being understood that said National Bank of Kentucky holds said fund subject as aforesaid to the order of said United States District Court."

Subsequently, on June 15, 1929, the bank, by its assistant cashier, advised plaintiff's counsel of the payment of the draft in a letter as follows:

"Acknowledging receipt of your letter of the 12th, beg to advise that the draft for Eight Thousand Dollars which you left with this bank for collection has been paid, and we are holding the proceeds in form of a cashier's check awaiting the time when your treasurer will, as you suggested in your letter, take the matter up with us.

"The court order accompanying your letter in the case of Paducah & Illinois Railroad Company, plaintiff, v. Holt, Sheriff, et al., defendant, has been filed for future reference."

On November 16, 1930, the National Bank of Kentucky was closed by order of its board of directors, and on the following day the Comptroller of the Currency of the United States appointed appellant as receiver, who duly qualified and took charge of all of the bank's assets. In February, 1931, the court entered its final decree in the tax suit, making permanent the preliminary injunction therein, and granting the relief prayed for by the plaintiff. Thereupon the appellee demanded that the receiver turn over to it the full sum of $8,000 as a special deposit, and, upon the refusal of the receiver to comply with the demand, filed a motion in the tax suit and obtained a rule requiring the receiver to show cause why he should not be compelled to do so. Following a hearing thereon, the District Court entered its final order and decree requiring the receiver to pay to the appellee the full sum of $8,000, and from such order and decree the receiver appeals.

■ The first question to be decided is whether the fund deposited with the bank is a trust fund, either because it is a special as distinguished from a general deposit, or because it must be construed as a trust by reason of its being a deposit for a specific purpose. If a trust fund, the depositor is entitled to preferential payment as against general creditors, providing the deposit augmented the bank's funds coming into the hands of the receiver, and providing the money can be traced into his possession. The doctrines of augmentation and tracing are, however, to be considered only if the trust relationship exists; otherwise they are unimportant.

■ We are concerned first with the distinction between special and general deposits. "All deposits made with bankers may be divided into two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter; and that other kind of deposit of money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker, and the latter, in consideration of the loan of the money, and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand." Commercial Nat. Bank of Pennsylvania v. Armstrong, 148 U. S. 50, 13 S. Ct. 533, 535, 37 L. Ed. 363, quoting with approval from Marine Bank v. Fulton Bank, 2 Wall. 252, 17 L. Ed. 785. A special deposit consists in the placing of specific kinds of money or property in the possession of the bank, with an obligation of the bank to return the identical thing deposited; the depositor retaining title. Parker State Bank v. Pennington (C. C. A.) 9 F.(2d) 966; Scammon v. Kimball, Assignee, 92 U. S. 362, 23 L. Ed. 483; Morse on Banking, §§ 183, 190, 205; Magee on Banking, pp. 276, 282; Michie on Banks and Banking, pp. 1286, 1297; Pitts v. Pease, 39 F.(2d) 14 (C. C. A. 5). On the other hand, a deposit is general where a sum of money is left with

the bank for safe-keeping, subject to order, and payable, not in the specific money deposited, but in an equal sum, whether it bears interest or not. Morse, §§ 183 and 185. As was said by the Supreme Court in Bank of Republic v. Millard, 10 Wall. 152, 155, 19 L. Ed. 897: "It is an important part of the business of banking to receive deposits, but when they are received, unless there are stipulations to the contrary, they belong to the bank, become part of its general funds, and can be loaned by it as other moneys. The banker is accountable for the deposits which he receives as a debtor, and he agrees to discharge these debts by honoring the checks which the depositor shall from time to time draw on it. The contract between the parties is purely a legal one, and has nothing of the nature of a trust in it." Cf. Burton v. United States, 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482.

■■■ Whether a deposit in a bank is general or special depends upon the mutual understanding and intention of the parties at the time such deposit is made, and a deposit made in the ordinary course of business is presumed to be general, and the burden of proof is upon the depositor to overcome such presumption by proving that the deposit was made upon such terms and conditions as constituted a special deposit, or a deposit for a specific purpose, as distinguished from a general deposit. Northern Sugar Corp. v. Thompson (C. C. A.) 13 F.(2d) 829.

■■■ Having in mind the nature of a special deposit, the trust relationship that results, and the initial presumption against its existence, it becomes necessary to determine what kind of a deposit was made in the instant case. If the deposit was special, its character must be derived from the terms of the court order directing it, the receipt given by the bank, and the bank's letter acknowledging payment of the draft. There is no other evidence. We fail to find in any of these instruments, herein sufficiently recited, any indication that it was the intention of the court or of the parties that the avails of the draft were to be segregated and kept as a separate fund until its disposition was directed by an order of the court. There was certainly no express direction in the order of the court to keep the funds deposited separate and distinct from the general funds of the bank, nor is any such direction to be clearly implied. That the parties did not themselves so interpret the arrangement seems equally clear. The bank's letter of June 15, 1929, informed the depositor that the bank was holding the proceeds of the deposited draft in the form of a cashier's check. This could have but one meaning, and that is that the funds received were held as part of the general funds of the bank, and were represented by the bank's check upon itself, to be delivered to the successful litigant upon the order of the court. Although this letter was received by the depositor seventeen months before the determination of the litigation, and fifteen months before the bank failed, it does not appear that any protest was made to the bank's method of handling the fund, nor was a contrary understanding expressed by the depositor.

It would of course have been competent for the court, or for the parties, to have created a trust fund awaiting the outcome of the litigation. While there is no exclusive formula recognized by the law to accomplish such purpose, the inclusion of apt words of direction in the court order, in the instructions of the depositor to the bank, or in the form of receipt demanded, could very easily have brought it about. As was said by the Supreme Court in the recent case of Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 517, 76 L. Ed. 1089: "It would have been equally competent for respondent to have provided for the purchase of the bonds either by the creation of a trust of funds in the hands of the bank, to be used for that purpose, or by establishing with it a credit to be debited with the cost of the bonds when purchased. But only if the former was the method adopted could respondent, upon the bank's insolvency and failure to purchase the bonds, recover the fund or its proceeds, if traceable, in preference to general creditors."

■■■ Trusts have been impressed upon funds which are not strictly special deposits, and where there is no intention expressed or clearly to be implied that the funds deposited should be segregated and not commingled with the general funds of the bank. Such trusts are generally held to result from some wrongful act on the part of the bank, such as the acceptance of a deposit by the officers of the bank, knowing at the time that the bank is insolvent. No such situation is here involved. Another ground for such declaration of trust is the receipt of funds to be applied and used for a definitely designated purpose, but which are in fact fraudulently or unlawfully appropriated to other uses. This misapplication constitutes a

wrongful act, and makes the recipient a trustee. Smith v. Mottley, 150 F. 266 (C. C. A. 6); Merchants' National Bank v. School District No. 8, 94 F. 705 (C. C. A. 9); Schumacher v. Harriett, 52 F.(2d) 817 (C. C. A. 4); Davis v. McNair, 48 F.(2d) 494 (C. C. A. 5), indirectly overruled by Blakey v. Brinson, supra. Board of Commissioners of Crawford County v. Strawn, 157 F. 49, 15 L. R. A. (N. S.) 1100 (C. C. A. 6). These decisions are not applicable here. Nor are we concerned with the so-called "collection" cases, typical of which are City of Miami v. First National Bank, 58 F.(2d) 561 (C. C. A. 5); Commercial Nat. Bank v. Armstrong, supra, and Equitable Trust Company v. Rochling, 275 U. S. 248, 48 S. Ct. 58, 72 L. Ed. 264. While funds received by banks as avails of checks or drafts deposited for collection are sometimes referred to as trust funds, the relationship between the bank and the depositor is, strictly speaking, one of agency and not of trust, and title to the paper while collection is being made is in the depositor and not in the bank.

Finally, there is a class of state cases which seem to hold that, whenever money is deposited with a bank to await the completion of a contract, the outcome of pending litigation, or as security, the deposit must be considered as having been received in trust for a specific purpose. Typical of such cases is Hudspeth v. Union Trust & Savings Co., 196 Iowa, 706, 195 N. W. 378, Cf. note 31 A. L. R. 472, and contra Cabrera v. Thannhauser & Co., 183 Cal. 604, 192 P. 45; Fralick v. Cœur D'Alene Bank & Trust Co., 36 Idaho, 108, 210 P. 586; Mutual Accident Association v. Jacobs, 141 Ill. 261, 31 N. E. 414, 16 L. R. A. 516, 33 Am. St. Rep. 302; Dearborn v. Washington Savings Bank, 13 Wash. 345, 42 P. 1107; Butcher v. Butler, 134 Mo. App. 61, 114 S. W. 564. We think, however, that it is the necessary effect of the Supreme Court cases cited that the presumption that arises from the very nature of the banking business of a right to use deposited funds in the general business of the bank where there is absent any expressed or clearly implied intention otherwise precludes us from sustaining the conclusion of the court below that the fund here in question was a special deposit, or became impressed with a trust. We are sustained in this view by decisions in other federal circuits upon similar or analogous facts. Minard v. Watts, 186 F. 245 (C. C. Kan.); Northern Sugar Corp. v. Thompson, supra; Fallgatter v. Citizens' National Bank, 11 F.

(2d) 383 (D. C. Minn.); Pitts v. Pease, supra.

It follows that the final order and decree of the District Court is reversed, and the cause is remanded for further proceedings consistent herewith.