**PEOPLES WESTCHESTER SAVINGS BANK, Plaintiff–Appellee,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Guardian Bank, N.A., Defendant–Appellant.**

**No. 1085, Docket 91–6277.**

United States Court of Appeals, Second Circuit.

Argued March 10, 1992.

Decided April 7, 1992.

Norva v. Granito (William E. Kelly, Lane & Mittendorf, of counsel), New York City, for plaintiff-appellee.

Jerome A. Madden (Ann S. Duross, Richard J. Osterman, Jr., Z. Scott Birdwell, of counsel), Washington D.C., for defendant-appellant.

Before: OAKES, Chief Judge, and ALTIMARI and WALKER, Circuit Judges.

WALKER, Circuit Judge:

This case comes to us on appeal from the United States District Court for the Eastern District of New York (Hon. Thomas C. Platt, Chief Judge). By memorandum and order dated September 9, 1991, the district court granted summary judgment in favor of Peoples Westchester Savings Bank ("Peoples Westchester"), denied the Federal Deposit Insurance Corporation's ("FDIC") motion for summary judgment, and directed the FDIC, as Receiver for Guardian Bank, N.A. ("Guardian") to pay over to Peoples Westchester $197,211.68— a sum held by Guardian allegedly as a special deposit or bailment on behalf of Peoples Westchester. *See Peoples Westchester Sav. Bank v. FDIC*, 772 F.Supp. 738, 741 (E.D.N.Y.1991). Because we hold, as a matter of law, that the district court erroneously concluded that the Guardian account was a special deposit rather than a general one, we reverse the grant of summary judgment, and remand the case with instructions to enter summary judgment for the FDIC.

### BACKGROUND

The facts are not in dispute. On September 19, 1988, Bonnie S. Nachamie, Esq. ("Nachamie") opened a client custodial account with Guardian. She established the account in the name of "Bonnie S. Nachamie, Esq., Attorney at Law, Trust Account # 2" (hereafter "Nachamie Account") and designated it to be an "interest on lawyer account" or an "IOLA." An IOLA is a creation of New York State statute, and is defined as "an unsegregated interest-bearing deposit account ... for the deposit by an attorney of qualified funds." N.Y.Jud. Law § 497(1) (McKinney Supp.1991). In turn, "qualified funds" are statutorily defined as,

monies received by an attorney in a fiduciary capacity from a client or beneficial owner and which, in the judgment of the attorney, are too small in amount or are reasonably expected to be held for too short time to generate sufficient interest to justify the expense of administering a segregated account for the benefit of the client or beneficial owner.

*Id.* at § 497(2). The interest earned by an IOLA is remitted directly to the state IOLA fund, and is used by New York to pay for legal assistance for the poor, and to improve the administration of justice generally. *See id.* at § 497(6)(c)(i).

On June 21, 1989, the United States Comptroller of Currency declared Guardian insolvent and appointed the FDIC as its receiver. As of that date, the Nachamie Account had a balance of $197,211.68— $168,700.00 of which was held by Nachamie on behalf of her client Peoples Westchester. The remaining $28,511.68 belonged to various other Nachamie clients. The FDIC informed Nachamie that because the account contained more than the federally-insured amount of $100,000, allotted for each beneficial owner, *see* 12 C.F.R. § 330.-2(b), (c), she would have to file a claim against the receivership estate for the uninsured excess.

In consideration of the $28,511.68 difference, Nachamie assigned all of her rights, title, and interest in the Nachamie Account to Peoples Westchester. Peoples Westchester then brought this action against the FDIC, as receiver, seeking to compel the FDIC to turn over the entire $197,-211.68 Nachamie Account balance. In the alternative, Peoples Westchester requested a declaration of preference in Guardian's liquidation for the amount of the full account balance.

Both parties moved for summary judgment. The FDIC argued before the district court that the Nachamie Account was a "general deposit" which created a creditor-debtor relationship between the depositor—

Bonnie Nachamie—and Guardian. As a general creditor, the FDIC further argued that Nachamie (and now by assignment, Peoples Westchester) was solely entitled to the federally-insured $128,511.68, and a *pro rata* distribution of the Guardian estate for any funds held on account in excess of that sum.

In its motion, Peoples Westchester contended that the Nachamie Account was a "special deposit" in the form of a bailment, and that a creditor-debtor relationship never existed. Peoples Westchester rested its claim on the theory that Nachamie never had title to the funds and thereby could not cede them to Guardian, and that, by virtue of the account being an IOLA, Guardian was on notice of the fact that Nachamie did not have title to the funds. The argument continued that a special deposit was thus created in favor of Nachamie's clients, and that because its funds had never become part of the Guardian estate, Peoples Westchester was entitled to full reimbursement from the FDIC.

The district court agreed with Peoples Westchester, and granted summary judgment in its favor. This appeal followed.

## DISCUSSION

■ We review a grant of summary judgment *de novo. See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). Under Fed.R.Civ.P. 56(c), summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* As stated above, the facts in this case are uncontested. Thus, we limit our analysis solely to the district court's application of the relevant law.

On appeal, the FDIC reasserts its argument that the Nachamie Account was a general deposit and, thus, the funds contained therein became part of the Guardian's general assets. It further adds that the National Bank Act, *see* 12 U.S.C. § 91, prohibits Peoples Westchester from receiving a preference in the distribution of the Guardian estate. Because we substantially agree with the FDIC's position concerning the "general" as opposed to "special" nature of the Nachamie Account, we need not reach the National Bank Act claim.

As a common rule, bank deposits can be classified as either general or special. 1 Natter, Schlichting, Rice & Cooper, *Banking Law* § 9.06 (1992). Long ago, the Supreme Court explained the distinction as follows:

> All deposits made with bankers may be divided into two classes, namely, those in which the bank becomes a bailee of the depositor, the title of the thing deposited remaining with the latter; and that other kind of deposit of money peculiar to the banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker; and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand.

*Marine Bank v. Fulton Bank,* 69 U.S. (2 Wall.) 252, 256, 17 L.Ed. 785 (1864).

This case turns on whether we conclude that IOLA accounts are essentially general or special deposits. The guiding rule for making this determination is set out in *Keyes v. Paducah & I.R. Co.,* 61 F.2d 611, 613 (6th Cir.1932), and states:

> Whether a deposit in a bank is general or special depends upon the mutual understanding and intention of the parties at the time such deposit is made, and a deposit made in the ordinary course of business is presumed to be general, and the burden of proof is on the depositor to overcome such presumption by proving that the deposit was made upon such terms and conditions as constituted a special deposit, or a deposit for a specific purpose, as distinguished from a general deposit.

*See also In re Kountze Bros.,* 103 F.2d 785, 789 (2d Cir.1939); *Swan v. Children's Home Society,* 67 F.2d 84, 86–87 (4th Cir. 1933). Contrary to the district court, we believe that Peoples Westchester has failed to carry its burden, and has not overcome the presumption that the Nachamie Account was intended as a general deposit.

First, the documents generated in opening the Nachamie Account do not evidence that Guardian assumed a duty to segregate those funds from its own general assets. To the contrary, the signature card evidencing the contract of deposit between Nachamie and Guardian makes no mention of a duty to segregate funds. It simply states that "[t]he Bank ... assumes no responsibility beyond its exercise of due care." Furthermore, the "Notice to Financial Institution to Establish IOLA Account," supplied by Guardian, merely indicated that Nachamie was opening an ordinary NOW checking account from which the interest that accrued would be paid to the state IOLA fund. Finally, the deposition testimony of Guardian officials, Catucci and Nolan, reveals the same—that there was no explicit agreement between the bank and Nachamie to segregate Nachamie's client funds, and that the money was held in a simple NOW account with the one difference being that the interest earned on the account was remitted to the State of New York.

█ We also note that the fact that a bank pays interest on an account, while not dispositive, is "very strong evidence that the title to the money deposited passed out of the depositor by the act of making the deposit," and thus, the creation of a general deposit was intended by the parties. *Swan,* 67 F.2d at 87. *See also John L. Walker Co. v. Alden,* 6 F.Supp. 262, 267 (E.D.Ill.1934). This conviction stems from the basic premise that a depositor receives interest in return for loaning money to a bank so that the bank may use the funds for its own investments. As the FDIC persuasively argues, "[a]s a matter of simple business or economic sense, a bank would not pay interest on funds which it could not use." The fact that pursuant to the IOLA statute, a bank must pay interest to the state rather than to the owner of the account does not alter this basic underlying relationship. Rather, it merely creates a statutory third party beneficiary to the parties' contract of deposit. Thus, Guardian's payment of interest on the Nachamie Account provides strong evidence that the account was intended as a general deposit.

█ In reaching the contrary conclusion, the district court reasoned that because Guardian was aware that the Nachamie Account was an IOLA, Guardian knew that the funds involved did not belong to Nachamie, but rather to her clients or other beneficial owners. *See* 772 F.Supp. at 741. This satisfied the district court that there was "an adequate understanding that a special deposit was intended." *Id.* However, as stated above, absent clear evidence of intent to create a special deposit, or an explicit agreement between an attorney and a bank to segregate funds, "the same relation of trust exists between [the attorney] and the bank as between [the bank] and any other general depositor; the relation of trust between the attorney and his client does not pass to or charge the bank as trustee of the client in respect to the money deposited." 5A Michie, *Banks and Banking,* Ch. 9 § 76 (1983). *See also Texas Commerce Bank–New Braunfels v. Townsend,* 786 S.W.2d 53, 53–54 (Tex.App. 1990); 1 Natter, *Banking Law,* § 9.06 at 9–27. We do not say that an IOLA can never be a special deposit. We simply conclude that in order for an IOLA to qualify as a special deposit, the parties must explicitly provide that it be one. Because there was no such evidence or agreement here, the district court erred in finding the parties' expressed intentions adequate to create a special deposit.

█ The district court also concluded that, by virtue of opening an IOLA for Nachamie, Guardian "accepted the funds on a basis that they were to be held for a specific purpose," thereby giving rise to a special deposit. 772 F.Supp. at 741. This misperceives the meaning of "specific purpose." "Specific purpose" connotes that, in holding the funds, the bank itself acts as an agent directly on behalf of the beneficial owner—a service for which the bank is separately compensated. *See John L. Walker Co.,* 6 F.Supp. at 264. In this case, Guardian acted merely as a passive repository of funds for safekeeping. It was Nachamie who acted as an agent for Peoples Westchester, not the bank.

■ In a similar vein, Peoples Westchester argues that "the IOLA statute defined the mutual understandings of, and the relationship between, Nachamie and Guardian...." We are not persuaded that the New York IOLA statute was intended to create a legal relationship of a different kind than the one traditionally shared between a bank and the beneficial owner of an attorney's custodial account. The statute does not contemplate, indeed it seems to reject, any special duty owed by a bank to a beneficial owner by virtue of the account's IOLA status.

The statute provides:

Payment from an IOLA account to or upon the order of the attorney maintaining such account shall be a valid and sufficient release of any claims by any person or entity against any banking institution for any payments so made.

N.Y.Jud.Law § 497(7)(a) (McKinney Supp. 1991).

The fact that the statute immunizes a bank from any liability stemming from an attorney's withdrawal of funds supports our conclusion that the statute, of its own, does not give rise to a special relationship between bank and beneficial owner. In maintaining an IOLA account, the lawyer, not the bank, is charged with a fiduciary duty to the client. Indeed, the bank has no greater obligation under the statute than to follow the instructions of the legal signatory—the lawyer. Thus, not only is the concept of a general deposit consistent with the statute, but the terms of an IOLA are inconsistent with a special deposit.

## CONCLUSION

■ For the foregoing reasons, we hold that Peoples Westchester failed to rebut the strong presumption that Nachamie's IOLA was intended to be a general deposit. Accordingly, the district court's grant of summary judgment in favor of Peoples Westchester is reversed. In view of the fact that an owner of a general deposit is a general creditor of a bank, Peoples Westchester is simply entitled to collect its federally-insured $128,511.68. With regard to its remaining claim for $68,-700, Peoples Westchester must take its place on line, together with all other general depositors similarly injured, for its *pro rata* share of Guardian's estate. Thus, we remand the case to the district court with instructions to enter summary judgment on behalf of the FDIC.

Reversed and Remanded with instructions.

ALTIMARI, Circuit Judge, dissenting:

Because I believe that at the time the IOLA was opened, Nachamie and Guardian clearly understood that the IOLA would be treated as a special deposit comprised of funds held in escrow by an attorney for that attorney's clients, I respectfully dissent.

Whether Nachamie's IOLA account is a special or general deposit turns on the mutual understanding and intent of the parties. *See, e.g., Keyes v. Paducah & I.R. Co.,* 61 F.2d 611, 613 (6th Cir.1932). Although the majority refers to this standard, I have difficulty discerning exactly what standard the majority applied in concluding that Peoples Westchester failed to sustain its burden of proving that Nachamie's IOLA was a special deposit. The majority appears to shift from a standard requiring proof of an "intent to create a special deposit *or* an explicit agreement ... to segregate funds" to a standard requiring the parties to "explicitly provide" for a special deposit. Ultimately, the majority concludes that because there was "no such evidence or agreement," the district court erred in treating the Nachamie account as a special deposit.

In any event, evaluating the facts of this case under the proper standard enunciated in *Keyes,* and considering the very nature of IOLA's, I agree with the district court that there is persuasive evidence that Guardian and Nachamie intended to and did create a special deposit. In reaching this conclusion, Chief Judge Platt appreciated the practical realities of the lawyer-client-bank relationship underlying the deposit of funds in an IOLA.

In the instant case, it is undisputed that Nachamie did not have title to the deposited funds, which belonged to her clients, and Guardian knew this. It is also clear that Guardian was aware that Nachamie's account was an IOLA. Not only did Nachamie complete an IOLA form apprising the bank of the nature of the account, but once the account was established, Guardian paid the interest earned to the state IOLA fund and sent monthly IOLA statements to the New York Board of Trustees. Significantly, the operation of an IOLA does not transfer title to the funds from the client to the attorney or in any way restrict the client's access to the funds. The funds are in escrow and are to be returned to the attorney's clients. Guardian therefore knew that the account's principal was held for Nachamie's clients, and that these funds were to be returned intact. These facts clearly support the conclusion that Guardian and Nachamie did not intend to create a general deposit, which would have entailed transferring title of the funds to Guardian, *see Marine Bank v. Fulton Bank*, 69 U.S. (2 Wall.) 252, 256, 17 L.Ed. 785 (1864), but instead intended to create a special deposit. *See* 5B *Michie On Banks and Banking* § 328 (1991).

Moreover, that Guardian paid interest on the IOLA, a fact the majority considers "strong evidence" of the intent to create a general deposit, is of no moment in determining the parties intent regarding the nature of the IOLA. The State of New York requires that interest be paid on funds deposited in *all* IOLA's, *see* N.Y.Jud.Law § 497(6)(b) (McKinney Supp.1992) and it therefore would have contravened the IOLA statute for the parties to have established an IOLA that did not pay interest. The interest paid on these accounts covers administrative fees, with any excess paid to the state's IOLA fund to support, among other things, the legal representation of indigents. *See* N.Y.State Fin.Law § 97–v(3)(b) (McKinney 1989).

Under these circumstances, I believe the majority erred in concluding that Peoples Westchester failed to rebut the presumption that the Nachamie IOLA was a general deposit. The record clearly established that Guardian (and Nachamie) knew and appreciated the special nature of the IOLA, and intended it to be a special deposit. For these reasons, I would affirm the judgment of district court granting Peoples Westchester's motion for summary judgment.