**D.C. PRECISION, INC., Plaintiff,**

**v.**

**UNITED STATES GOVERNMENT, Jugobanka A.D., formerly doing business as Jugobanka D.D. New York Agency, and Beogradska Banka A.D., formerly doing business as Beogradska Banka D.D. New York Agency, Defendants.**

**No. 97 CIV. 9123(RLC).**

United States District Court,
S.D. New York.

June 29, 1999.

John Walshe & Associates, New York (John Walshe, of Counsel), for Plaintiff.

Mary Jo White, United States Attorney for the Southern District of New York, New York (David S. Jones, Assistant United States Attorney, of Counsel), for Defendant the United States of America.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff D.C. Precision, Inc. ("D.C.Precision") brought this action against defendants the United States Government (the "government"), Jugobanka A.D. ("Jugobanka"), and Beogradska Banka A.D. ("Beogradska Banka"), seeking compensatory, declaratory, and injunctive relief on the ground that the blocking of its funds on deposit in a New York agency of a Yugoslav bank constitutes an uncompensated "taking" in violation of the Fifth Amendment of the United States Constitution. Now before the court is the government's and Jugobanka's motions to dismiss

the complaint pursuant to Rules 12(b)(1) and 12(b)(6), F.R. Civ. P.

## BACKGROUND

### A. Facts

In the early 1990s, political crisis led to the dissolution of the Socialist Federated Republic of Yugoslavia. In response to this crisis, the United States has imposed a comprehensive economic sanctions program against the Federal Republic of Yugoslavia (Serbia and Montenegro) (the "FRY(S & M)"). Invoking his authority under the International Emergency Economic Powers Act ("IEEPA"), President Bush issued Executive Order 12808 on May 30, 1992, blocking "all property and interests in property of ... the [FRY (S & M) ] that hereafter come within the United States, or that are or hereafter come within the possession or control of United States persons ...." President Clinton continued the sanctions program by blocking the property and interests in property of all commercial, industrial, and public utility entities organized or located in the FRY(S & M) through the issuance of Executive Order 12846, dated April 25, 1993. (collectively, the "Executive Orders").

The Executive Orders are implemented by the Department of the Treasury through the Federal Republic of Yugoslavia (Serbia and Montenegro) and Bosnian Serb–Controlled Areas of the Republic of Bosnia and Herzegovina Sanctions Regulations (the "Sanctions Regulations"). See 31 C.F.R. Part 585. Under the Sanctions Regulations, blocked property or interests in property may not be "transferred, paid, exported, withdrawn or otherwise dealt in" without a license from the Office of Foreign Assets Control in the Department of the Treasury ("OFAC"). See 31 C.F.R. § 585.201(a) & (b).

D.C. Precision is a California corporation that has approximately $40,000 in assets on deposit in a New York agency of Jugobanka, a bank which is organized un-

der the laws of the FRY(S & M). Jugobanka's property and interests in property, including D.C. Precision's deposit, have been blocked pursuant to the Executive Orders.

## B. Procedural History

On December 10, 1997, D.C. Precision filed complaint on behalf of itself and on behalf of all other "depositors who are either U.S. nationals or U.S. corporations whose accounts are being held by the United States Government's [sic] pursuant to sanctions against Yugoslavia," *see* Complaint ¶ V, asserting a violation of the Fifth Amendment of the United States Constitution. The complaint sought, *inter alia*, damages in excess of $10,000,000. On March 24, 1998, the government moved for dismissal on the ground that this court lacked subject matter jurisdiction because the United States Court of Federal Claims has exclusive jurisdiction of Fifth Amendment taking claims that exceed $10,000, and because D.C. Precision had not attempted to obtain a license from OFAC and therefore had not exhausted the available administrative remedies. The government also moved for dismissal on the basis that the complaint failed to state a claim. On March 30, 1998, defendant Jugobanka similarly moved for dismissal for failure to state a claim.

In its October 14, 1998 opposition papers to the government's motion to dismiss, D.C. Precision contended that the government had misconstrued its claims. D.C. Precision stated that it had in fact only sought declaratory relief from the government, not monetary damages. Plaintiff also informed the court that it had since applied for a license from OFAC on April 6, 1998 to withdraw its assets from Jugobanka. On October 22, 1998, OFAC informed D.C. Precision that its application for a license was denied.

After the government's filing of its reply papers, D.C. Precision submitted a "Declaration in Further Opposition" to the motion to dismiss on November 3, 1998. In the Declaration, D.C. Precision implied that OFAC's denial of its license application was made in bad faith and retaliatory. The government filed its surreply on November 30, 1998.

## DISCUSSION

### A. Jurisdiction and Sovereign Immunity

■■■ In any suit where the United States is a defendant, plaintiff must demonstrate subject matter jurisdiction, a waiver of sovereign immunity, and that he has a valid cause of action. *See Presidential Gardens Assoc. v. United States*, 175 F.3d 132, 139 (2d Cir.1999) (to be reported at 175 F.3d 132). The waiver of sovereign immunity is a prerequisite to subject matter jurisdiction, but "the issues of subject-matter jurisdiction and sovereign immunity are nonetheless 'wholly distinct.'" *Id.* (citations omitted). Therefore, a demonstration of subject matter jurisdiction is "not alone sufficient to allow [a suit against the United States] to proceed—there must be a showing of specific waiver of sovereign immunity." *Id. See also Ward v. Brown*, 22 F.3d 516, 519 (2d Cir.1994).

The government first contends that the complaint must be dismissed because the court lacks jurisdiction over plaintiff's Fifth Amendment taking claim. The Tucker Act provides both subject matter jurisdiction and a waiver of sovereign immunity for non-tort claims against the United States founded either upon the constitution, a federal statute, or any regulation of an executive department. *See* 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). The Tucker Act states that when the amount in controversy in a suit against the United States does not exceed $10,000, federal district courts shall have original jurisdiction concurrent to the United States Court of Federal Claims ("Court of Federal Claims"). *See* 28 U.S.C. § 1346(a)(2). The Court of Federal Claims, however, may entertain such actions without regard to the amount in controversy. *See* 28

U.S.C. § 1491(a)(1). The government reasons that because the amount in controversy of D.C. Precision's claim against the United States, as stated initially in the complaint, exceeds $10,000, the Court of Federal Claims has exclusive jurisdiction.

■■■ However, the Second Circuit has rejected such a limited construction of the Tucker Act. *See C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co.*, 903 F.2d 114, 119 (2d Cir.1990) (noting that Tucker Act does not expressly state that jurisdiction of the Court of Federal Claims is exclusive and finding that omission to be significant). *But see Wilkerson v. United States*, 67 F.3d 112, 118 (5th Cir.1995) (holding that Tucker Act grants exclusive jurisdiction to Court of Federal Claims on claims that exceed $10,000,). Rather, under the law of this circuit, "regardless of the amount in controversy, an action in district court is proper under the federal question jurisdiction statute, 28 U.S.C. § 1331, if a statute other than the Tucker Act provides the necessary waiver of sovereign immunity." *Ward*, 22 F.3d at 519 (citation omitted). Moreover, in a suit against the United States where plaintiff seeks only declaratory relief, the Court of Federal Claims lacks jurisdiction altogether. *See Chateaugay Corp. v. Shalala*, 53 F.3d 478, 493 (2d Cir.1995) (considering merits of taking claim).

■■■ The court must next address the issue of whether a statute other that the Tucker Act provides an independent waiver of sovereign immunity. The government concedes that D.C. Precision has suffered a final adverse agency decision, in the form of OFAC's denied of its license application, that it may challenge through the filing of a complaint pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.* (government's reply memorandum, at 4). The APA entitles "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute ... to judicial review thereof." 5 U.S.C. § 702. The

Supreme Court has interpreted the APA as amended as providing a valid waiver of sovereign immunity. *See Ward*, 22 F.3d at 520 (citing *Bowen v. Massachusetts*, 487 U.S. 879, 891–92, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988)). The APA, however, does not waive sovereign immunity for money damages claims. *See id.* Hence, to the extent that D.C. Precision seeks monetary damages from the government, such claims are dismissed. Plaintiff's claims seeking declaratory or injunctive relief nevertheless remain properly within the province of this court.

The government, however, contends that the complaint should be dismissed on jurisdictional and sovereign immunity grounds because D.C. Precision's complaint as filed did not assert an APA claim. The government also asserts the related argument that D.C. Precision's cause of action is not "ripe," because at the time of the filing of its complaint, plaintiff had not exhausted its administrative remedies.

■■■ Under Rule 15(d), F.R. Civ. P., "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense." Furthermore, permission to file a supplemental pleading should be "freely granted where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other parties." *Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir.1989). The supplemental pleading procedure is also proper in cases where an administrative agency had not rendered a final decision on plaintiff's claim prior to the commencement of the suit, but did render a final decision while

the suit was pending. *See, e.g., id.,* 869 F.2d at 68–69 (remanding case to district court to permit plaintiff to file supplemental complaint where administrative agency had rendered adverse final decision after filing of initial complaint).

While plaintiff has yet to formally seek leave of the court to file a supplemental complaint, the court has no doubt that it would grant leave upon a proper motion. The court also notes that both sides have addressed the merits of D.C. Precision's APA claim. Hence, in the interest of judicial economy and because defendants have failed to plead any prejudice to their rights, the court will consider the merits of D.C. Precision's claim brought pursuant to the APA.

## B. Jugobanka's Property or Interest in Property

■ D.C. Precision's primary contention is that the Executive Orders and the Sanctions Regulations do not authorize the blocking of its deposit with Jugobanka because the deposit is a "special" rather than "general" deposit.[1] According to plaintiff, the deposit is therefore not the property or an interest in property of Jugobanka.

■ As a common rule, bank deposits can be classified either as "general" or "special." *See Peoples Westchester Sav. Bank v. Federal Deposit Insur. Corp.,* 961 F.2d 327, 330 (2d Cir.1992) (citation omit-

ted). Funds deposited into a general account are commingled with the assets of the bank; in essence, " 'the depositor, for his own convenience, parts with title to his money, and loans it to the banker.' " *See id.* (quoting *Marine Bank v. Fulton Bank,* 69 U.S. (2 Wall.) 252, 256; 17 L.Ed. 785 (1864)). In contrast, when funds are deposited into a "special" account, " 'the bank becomes the bailee of the depositor, the title of the thing deposited remaining with the latter.' " *Id. See also Swan Brewery Co. v. United States Trust Co. of New York,* 832 F.Supp. 714, 717 (S.D.N.Y.1993) (Sweet, J.). Examples of special deposits include deposits made for the "purpose for paying such funds to a third person upon the presentation of certain papers or instruments of title;" "paying a mortgage indebtedness;" and "meeting certain checks or classes of checks." 9 N.Y. Jur.2d Banks and Fin. Institutions § 263.

■ Whether a deposit in a bank is general or special depends upon the mutual understanding and intention of the parties at the time the deposit is made. *See Peoples Westchester Savings Bank,* 961 F.2d at 330 (citing *Keyes v. Paducah & I.R. Co.,* 61 F.2d 611, 613 (6th Cir.1932)). Furthermore, under New York law, deposits are presumed to be general rather than specific. *See Swan Brewery Co.,* 832 F.Supp. at 718–19. A depositor therefore has the burden of proving that the "depos-

---

1. D.C. Precision appears to have abandoned its claim that the blocking of its deposit with Jugobanka constitutes a taking in violation of the Fifth Amendment, as it has not addressed the merits of such a claim in any of its opposition papers to defendants' motions to dismiss. Rather, D.C. Precision seems to have re-characterized its cause of action as one seeking a declaratory judgment that its deposit is not "property" or "an interest in property" of Jugobanka under the Sanctions Regulations and thus is not covered by the Executive Orders. The court will therefore focus its discussion on this claim. However, to the extent that D.C. Precision plans to pursue a taking claim, the court holds that the claim is meritless. Assets blocked under the Executive Orders are not seized or appropriated by the government. Rather,

blocking temporarily prohibits transactions involving those assets. Accordingly, D.C. Precision has not suffered from a constitutionally cognizable taking without just compensation. *See Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 224, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986) (no taking where government interference with plaintiff's property interest was non-physical, nonpossessory); *Tran Qui Than v. Regan,* 658 F.2d 1296, 1304 (9th Cir.1981) (no taking where blocking program did not vest assets in government, but temporarily deprived plaintiff of enjoyment of property interest); *767 Third Avenue Associates v. United States,* 48 F.3d 1575, 1582 (Fed.Cir.1995) (no taking occurs when expectations under a contract are merely frustrated by lawful government action not directed against plaintiff).

it was made upon such terms and conditions as constituted a special deposit, or a deposit for a specific purpose, as distinguished from a general deposit." *Keyes,* 61 F.2d at 613.

D.C. Precision contends that its deposit with Jugobanka is necessarily a special deposit because, under New York law, an agency of a bank organized under the laws of a foreign country, such as Jugobanka, is ordinarily not permitted to accept deposits from United States citizens or residents. *See In the Matter of the Liquidation of the New York Agency and Other Assets of Bank of Credit and Commerce Int'l, S.A.,* 90 N.Y.2d 410, 422, 660 N.Y.S.2d 850, 683 N.E.2d 756 (1997). According to plaintiff, since Jugobanka is not empowered to accept general deposits, any deposit accepted must have been accepted for a specific purpose, and thereby, a special deposit.

OFAC rejected this precise argument as part of its denial of D.C. Precision's application for a license to withdraw its assets from Jugobanka. *See* Jones Declar., Exh. A. As previously discussed, Executive Order 12846 blocks the property and interests in property of all commercial, industrial, and public utility entities organized or located in the FRY(S & M). *See* Exec. Order No. 12846, 58 Fed.Reg. 25771 (1993). Under the Sanctions Regulations, the "term interest when used with respect to property (e.g., an interest in property) means an interest of any nature whatsoever, direct or indirect." *See* 31 C.F.R. §§ 585.303, 586.310. Moreover, the Sanctions Regulations list a wide array of property and property interests that are subject to blocking, including "bank deposits," "letters of credit and any documents relating to any rights or obligations thereunder," "powers of attorney," "contracts of any nature whatsoever," and "any other property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future or contingent." *See* 31 C.F.R. § 585.304. Applying the Sanctions Regulations to the instant case, OFAC found that even if D.C. Precision's

deposit with Jugobanka is special under New York law, the assets are nevertheless considered property in which Jugobanka has an "interest."

An agency's interpretation of its own regulations must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Stinson v. United States,* 508 U.S. 36, 45, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). *See also Consarc Corp. v. Iraqi Ministry,* 27 F.3d 695, 701 (D.C.Cir.1994) ("We think that OFAC may choose and apply its own definition of property interests, subject to deferential judicial review."). Therefore, the court's inquiry is limited to whether the plain language of the Sanctions Regulations themselves or some other indication of OFAC's intent at the time of promulgation compels a different result from the agency's determination that D.C. Precision's deposit is an interest in property of Jugobanka. *See Rock of Ages Corp. v. Secretary of Labor,* 170 F.3d 148, 154 (2d Cir.1999).

Assuming that the deposit is indeed "special" under New York law, as the court is bound to do on a motion to dismiss, the court nevertheless finds that OFAC's determination is not inconsistent from the plain language of the Sanctions Regulations. Not only do the Sanctions Regulations define property and property interests in broad, sweeping terms, but the regulations also include property that is considered "special" under New York law—the very type of property that plaintiff asserts is not subject to blocking under the Executive Orders. For instance, the Regulations specifically state that a letter of credit is considered property or an interest in property. *See* 31 C.F.R. § 585.304. Under New York law, special deposits include deposits made "for the purpose of paying such funds to a third person upon the presentation of certain papers or instruments of title," i.e., letters of credit. *See* 9 N.Y. Jur.2d Banks and Fin. Institutions § 263. Accordingly, D.C. Precision's contention that the deposit's

status as "special" under New York law precludes the assets from blocking pursuant to the Executive Orders is without merit.

### CONCLUSION

For the foregoing reasons, the government's and Jugobanka's motions to dismiss are granted.[2] As plaintiff has not asserted a cognizable claim against any of the defendants, plaintiff's complaint is hereby dismissed with prejudice in its entirety.

**IT IS SO ORDERED.**

---

**2.** D.C. Precision filed this complaint as a class action suit. It has yet to move for class certification, however. Regardless, since defendants' motions to dismiss have been granted, the class certification issue is moot.